Per Curiam.
 

 The statement of facts was set forth in our prior opinion,
 
 Piccolo v Nix,
 
 246 Mich App 27, 30-32; 630 NW2d 900 (2001),vacated 466 Mich 861 (2002):
 

 On July 4, 1996, defendant hosted a party at her residence. Defendant purchased a keg of beer
 
 [1]
 
 and food for the event. The event was attended by defendant’s son and his friends, including members of the son’s band. The majority of the individuals who attended the party, including plaintiff, were under twenty-one years of age. Defendant testified
 
 *677
 
 that she and members of the band told individuals attending the party that the beer was for individuals who were of legal drinking age. In addition to alcohol on the premises, various witnesses testified that they brought marijuana and “magic mushrooms” to the party for their own personal use.
 
 [2]
 
 The location of defendant’s home provided limited parking space, so numerous individuals parked across the street at a senior citizen apartment complex. The police received a complaint from residents of the complex about a disturbance. The police found men, including Michael Bum-ham, by his van in the parking lot of the senior complex. There were two cups and a bottle of beer in the van, as well as drag paraphernalia. The men had an “X” on their hands. They indicated that they had been drinking at defendant’s residence, and the “X” on their hands indicated that they had paid $5 for beer.
 
 [3]
 
 Police officers opined that Burnham was intoxicated. They allegedly walked the men back to defendant’s residence and spoke to her regarding the condition of the men. Defendant allegedly told police that she would ensure that intoxicated individuals were driven home by designated drivers or stayed at the residence. The keys to Burnham’s van were allegedly given to defendant. Some witnesses testified that, after the visit from the police, defendant lectured party attendees regarding their conduct and collected keys to vehicles. Additionally, defendant and other witnesses testified that the keg was “untapped” after the visit by the police. Defendant testified that the “tap” was hidden in the garage to preclude further drinking. Other witnesses testified that beer continued to be drawn from the keg until it was empty.
 

 The testimony surrounding Burnham’s departure from the party also varied. Defendant testified that she was assured that Burnham was not driving home, but was being driven home by another individual. Defendant had trouble identifying the various individuals who had attended the party and who agreed to ensure Burnham’s safe return home. Other witnesses alleged that defendant turned the lights on and off and told everyone to leave the home, in such a manner that staying overnight at the residence was not an option. Another witness testified that defendant implored Burnham to stay the night at her home, but Burnham essentially
 
 *678
 
 “fooled” defendant into believing that he was capable of driving. Nonetheless, Burnham got into his cargo van with five other individuals, including plaintiff. There were only-two seats in the van, one for the driver and one for the front seat passenger. The remaining area of the van was open and contained tires and tools. The four passengers, including plaintiff, lay or sat in the back while Burnham drove them home. Unfortunately, the front seat passenger was obnoxious. There was frequent yelling and manipulation of the radio between the front seat passenger and Burnham. The back seat passengers yelled at Burnham to calm down and slow down because the van was traveling at a high rate of speed. Burnham failed to negotiate a slight curve in the gravel road and drove the van into a tree. Plaintiff was injured by the tires that were in the vehicle. When the police arrived on the scene, they found mushrooms near the van. Later testing of the mushrooms revealed that they had not been chemically altered, but were plain, ordinary mushrooms. The occupants of the van, for some unknown reason, hid the tires away from the scene of the accident. The police were never able to determine why the tires were moved.
 

 
 *679
 
 In lieu of granting leave to appeal, our Supreme Court vacated the majority opinion and remanded this case to our Court with the following instruction:
 

 On remand, the Court of Appeals is to construe MCL 600.2955a(l) consistent with the principles articulated in
 
 Mclntire [People v Mclntire,
 
 461 Mich 147, 155-156, n 2; 599 NW2d 102 (1999)] and
 
 Gilbert [Gilbert v Second Injury Fund,
 
 463 Mich 866 (2000)]. In rendering its opinion on remand the Court of Appeals is to view the evidence and all legitimate inferences in the light most favorable to defendant,
 
 Forge v Smith,
 
 458 Mich 198, 204 [580 NW2d 876] (1998), and determine whether there was sufficient evidence to show that plaintiff was fifty percent, or more, the cause of the accident
 
 or
 
 event that resulted in the injury. [466 Mich 861 (2002) (emphasis in original).]
 

 MCL 600.2955a provides, in relevant part:
 

 (1) It is an absolute defense in an action for the death of an individual or for injury to a person or property that the individual upon whose death or injury the action is based had an impaired ability to function due to the influence of intoxicating liquor or a controlled substance, and as a result of that impaired ability, the individual was 50% or more the cause of the accident or event that resulted in the death or injury. If the individual described in this subsection was less than 50% the cause of the accident or event, an award of damages shall be reduced by that percentage.
 

 Issues of statutory construction present questions of law and receive review de novo.
 
 Oakland Co Bd of Co Rd Comm’rs v Michigan Property & Casualty Guaranty Ass’n,
 
 456 Mich 590, 610; 575 NW2d 751 (1998). Every word or phrase of a statute will be assigned its plain and ordinary meaning unless defined in the statute. See MCL 8.3a;
 
 Robertson v DaimlerChrysler Corp,
 
 465 Mich 732, 748; 641 NW2d 567 (2002). We may consult dictionary definitions when terms are
 
 *680
 
 not expressly defined by statute.
 
 Oakland Co, supra
 
 at 604. “Event” means “something that happens or is regarded as happening; an occurrence, especially one of some importance” or “the outcome, issue, or result of anything.”
 
 The Random House Dictionary of the English Language: Unabridged Second Edition
 
 (1998), p 671.
 

 Given this broad definition, there was evidence from which the jury could conclude that plaintiff was fifty percent, or more, the cause of the “event” that resulted in the injury. Plaintiff, who was over eighteen years of age but under the legal drinking age of twenty-one, elected to consume alcohol and become intoxicated. Plaintiff freely chose to accept a ride home from an intoxicated driver. Plaintiff also chose to ride in an automobile that did not have proper seating or restraints in the rear compartment and was filled with unrestrained materials including a tire and several tools. Under these circumstances, defendant was entitled to the absolute defense of impairment, and the judgment of no cause of action must be affirmed.
 

 Affirmed.
 

 [1]
 

 Defendant and her son testified that the keg was a quarter barrel of beer, while other witnesses testified that the keg was a half barrel of beer.
 

 [2]
 

 The witnesses’ testimony regarding defendant’s knowledge of the substance and alcohol use varied. Defendant claimed that she did not see underage individuals consuming alcohol and that soda pop was available for those individuals. Additionally, defendant claimed that marijuana use did not occur in her presence, and she did not smell marijuana. Other witnesses concurred that marijuana use did not occur in defendant’s presence. However, plaintiff and Jennifer Cassavoy testified that defendant was aware of drug and alcohol use by minors that occurred openly in the home.
 

 [3]
 

 Defendant testified that the $5 was not charged for beer, but was to cover the costs of the extensive amount of food purchased for the party and for the band.