HARBOUR v CORRECTIONAL MEDICAL SERVICES, INC

Docket Nos. 252857, 257012. Submitted April 13, 2005, at Detroit. Decided May 24, 2005, at 9:00 a.m. Leave to appeal sought.

Karlene S. Harbour, as personal representative of the estate of Kevin D. Harbour, deceased, brought a wrongful death action in the Macomb Circuit Court against Correctional Medical Services, Inc., alleging and seeking damages for medical malpractice, intentional misconduct, and negligence in the death of Kevin Harbour while he was in the Macomb County Jail following his arrest for operating a motor vehicle while under the influence of liquor and an assessment by a nurse employed by the defendant. Both parties rejected a case evaluation in favor of the plaintiff. The court, Edward A. Servitto, Jr., J., granted summary disposition for the defendant on all claims except malpractice, which claim was tried before a jury. At the end of the plaintiff's proofs, the court granted a directed verdict for the defendant on the ground that MCL 600.2955a precludes recovery because the evidence unequivocally established that the decedent's intoxication was the proximate cause of his death. The court also denied the defendant's motion for case evaluation sanctions, invoking the "interest of justice" exception to sanctions, MCR 2.403(O)(11), on the basis of the defendant not having raised the defense based on MCL 600.2955a earlier than the motion for directed verdict. The plaintiff appealed the trial court's grant of a directed verdict, and the defendant appealed the trial court's denial of case evaluation sanctions. The appeals were consolidated.

The Court of Appeals held:

1. The trial court properly granted the defendant's motion for a directed verdict based on MCL 600.2955a. That statute bars recovery where the plaintiff had an impaired ability to function due to the influence of intoxicating liquor and was more than fifty percent responsible for the accident or event causing his injury. Alcohol withdrawal is such an event. Although caused by drinking alcohol, alcohol withdrawal is a process or syndrome distinct from the consumption of alcohol; alcohol withdrawal has a detectable onset, it is manifested by specific symptoms, and it eventually passes. The decedent had an impaired ability to function due to the

influence of intoxicating liquor. As a result of that impaired ability, the decedent was fifty percent or more the cause of the event (alcohol withdrawal) that resulted in his death.

2. The trial court did not abuse its discretion in denying the defendant's motion for case evaluation sanctions, MCR 2.403(O)(1), by invoking the "interest of justice" exception, MCR 2.403(O)(11). The defendant elected to continue the litigation process, despite being cognizant of the viable defense provided by MCL 600.2955a, and deliberately waited until after the plaintiff's presentation of proofs and five days of trial to present the dispositive motion. For a trial court to invoke the "interest of justice" exception, unusual circumstances need to be demonstrated. The defendant's trial strategy and gamesmanship were sufficiently unusual circumstances to warrant the invocation of the "interest of justice" exception to case evaluation sanctions.

Affirmed.

1. NEGLIGENCE — WRONGFUL DEATH — INTOXICATED PLAINTIFF — ABSOLUTE DEFENSE — ALCOHOL WITHDRAWAL.

It is an absolute defense in an action for the death of an individual or for injury to a person or property that the individual on whose death or injury the action is based had an impaired ability to function due to the influence of intoxicating liquor or a controlled substance and, as a result of that impaired ability, the individual was fifty percent or more the cause of the accident or event that resulted in the death or injury; the absolute defense applies to a wrongful death action in which the decedent had an impaired ability to function after consuming liquor and died as a result of alcohol withdrawal (MCL 600.2955a).

2. COSTS — CASE EVALUATION SANCTIONS — INTEREST OF JUSTICE EXCEPTION.

One unusual circumstance allowing the invocation of the "interest of justice" exception to case evaluation sanctions may be based on gamesmanship in trial strategy, such as when a defendant elects to continue the litigation process, despite being cognizant of a viable defense, and deliberately waits until after the plaintiff's presentation of proofs at trial to present the dispositive motion (MCR 2.403[O][11]).

*Frank K. Penirian, Jr.,* for the plaintiff.

*Chapman and Associates, P.C.* (by *Ronald W. Chapman* and *Brian J. Richtarcik*), for the defendant.

Before: GRIFFIN, P.J., and BANDSTRA and HOEKSTRA, JJ.

GRIFFIN, P.J. In these consolidated appeals, plaintiff appeals as of right in Docket No. 252857 the trial court's order granting defendant's motion for directed verdict and dismissing plaintiff's case with prejudice. In Docket No. 257012, defendant appeals as of right the order of the same court denying its motion for case evaluation sanctions. We affirm.

I

This case arose when plaintiff's decedent, Kevin Daniel Harbour, was arrested for driving while under the influence of intoxicating liquor. He was taken to the Macomb County Jail and a Breathalyzer test was administered. He registered 0.32 grams per 210 liters of breath, over three times the then-existing legal limit for operating a motor vehicle while under the influence of liquor (OUIL). At the jail, he was assessed by an employee of defendant Correctional Medical Services, Inc. (CMS), nurse Brenda Froehlich, who placed him on "sick call" in a holding cell, to be seen by a doctor the next morning. Kevin Harbour collapsed in his cell approximately two hours after the assessment and died as a result of irregular heart rhythms caused by acute alcohol withdrawal, a manifestation of chronic alcoholism.

Plaintiff filed suit for the wrongful death of Kevin Daniel Harbour. Plaintiff's first amended complaint alleged medical malpractice, intentional misconduct, and ordinary negligence against defendant CMS.[1] In

---

[1] Count I of the amended complaint alleged that nurse Brenda Froehlich breached the nursing standard of care owed to plaintiff's decedent by failing to make an adequate assessment and failing to plan for subsequent care, including either monitoring or contacting a physician,

December 2000, both parties rejected a unanimous case evaluation of $75,000 in favor of plaintiff. The trial court thereafter granted in part defendant's motion for summary disposition and dismissed all the plaintiff's claims, with the exception of the count alleging medical malpractice.[2] A jury trial commenced, and at the close of plaintiff's proofs, defendant moved for, and the trial court granted, a directed verdict on the ground that MCL 600.2955a precluded recovery because the evidence unequivocally established that the decedent's intoxication was the proximate cause of his death. However, the trial court denied defendant's motion for case evaluation sanctions on the ground that defendant should have raised the statutory defense of impairment provided by MCL 600.2955a earlier and, by failing to do so, therefore caused plaintiff and the court to waste resources. The parties now appeal.

II

In Docket No. 252857, plaintiff argues that the trial court erred in granting a directed verdict in favor of defendant on the basis of MCL 600.2955a. A trial court's decision on a motion for a directed verdict is reviewed de novo to determine whether all the evidence and inferences, viewed in the light most favorable to the nonmovant, fail to establish a claim as a matter of law. *Sniecinski v Blue Cross & Blue Shield of Michigan*, 469 Mich 124, 131; 666 NW2d 186 (2003). Issues of law are also reviewed de novo on appeal. *Burba v Burba (After Remand)*, 461 Mich 637, 647; 610 NW2d 873 (2000).

---

and that defendant CMS was vicariously liable for her actions. Brenda Froehlich was never served with a notice of intent to sue pursuant to MCL 600.2912b or named as a defendant in this case.

[2] Plaintiff has not appealed that order.

The trial court granted the directed verdict on the basis of MCL 600.2955a, which provides:

> (1) It is an absolute defense in an action for the death of an individual or for injury to a person or property that the individual upon whose death or injury the action is based had an impaired ability to function due to the influence of intoxicating liquor or a controlled substance, and as a result of that impaired ability, the individual was 50% or more the cause of the accident or event that resulted in the death or injury. If the individual described in this subsection was less than 50% the cause of the accident or event, an award of damages shall be reduced by that percentage.
>
> (2) As used in this section:
>
> (a) "Controlled substance" means that term as defined in [MCL 333.7104].
>
> (b) "Impaired ability to function due to the influence of intoxicating liquor or a controlled substance" means that, as a result of an individual drinking, ingesting, smoking, or otherwise consuming intoxicating liquor or a controlled substance, the individual's senses are impaired to the point that the ability to react is diminished from what it would be had the individual not consumed liquor or a controlled substance. An individual is presumed under this section to have an impaired ability to function due to the influence of intoxicating liquor or a controlled substance if, under a standard prescribed by [MCL 257.625a], a presumption would arise that the individual's ability to operate a vehicle was impaired.

Thus, pursuant to MCL 600.2955a, in order to successfully avail itself of the absolute defense of impairment, defendant in this case was required to establish that (1) the decedent had an impaired ability to function due to the influence of intoxicating liquor or a controlled substance, and (2) that as a result of that impaired ability, the decedent was fifty percent or more the cause of the accident or event that resulted in his death.

As a preliminary matter, we note that under the version of MCL 257.625a(7) in effect at the time of the incident in question, legal intoxication was 0.10 grams or more of alcohol in each 210 liters of breath or 100 milliliters of blood. There is no dispute that the decedent's blood alcohol level was 0.32 grams, or three times the legal limit. Therefore, the decedent presumptively had an "impaired ability to function due to the influence of intoxicating liquor" under MCL 600.2955a(2)(b). At trial, plaintiff presented no evidence to refute that presumption. On the contrary, plaintiff's expert addictionist, Dr. Berger, testified that, although the decedent was a chronic alcoholic with a very high alcohol tolerance, the decedent had an impaired ability to function due to the influence of intoxicating liquor at the time of the incident in question. Therefore, the first element of the statute was established beyond dispute.

Plaintiff, however, argues that the directed verdict contradicts the statute's requirement that there must be an "accident or event" resulting in death, distinct and apart from the decedent's initial voluntary intoxication that caused impairment. Plaintiff maintains that alcohol withdrawal should not be considered an "accident or event" under MCL 600.2955a(1). Plaintiff contends that this case is distinguishable from *Piccalo v Nix (On Remand)*, 252 Mich App 675; 653 NW2d 447 (2002), and *Wysocki v Felt*, 248 Mich App 346; 639 NW2d 572 (2001), both of which were cited by defendant in support of its motion for a directed verdict. Plaintiff claims that in those cases, intoxication was followed by a discrete injurious "event," arguably influenced by the insobriety of the injured party, whereas in the present case there was no "accident or event" independent of the decedent's alcohol-induced impairment and resultant withdrawal. We disagree.

In *Piccalo,* the plaintiff brought an action against the defendant, alleging that, as a result of the defendant's negligence, she sustained injuries in an automobile accident on her way home from a party hosted by the defendant. The plaintiff had become intoxicated at the party and then left the party as a passenger in a van driven by a drunken driver. The plaintiff was seated in the back of the van, with no seat and no seat belt, when the van left the roadway and struck a tree. The trial court entered a judgment of no cause of action pursuant to MCL 600.2955a after the jury found the plaintiff to be fifty-three percent negligent. On appeal, this Court ultimately affirmed the judgment of no cause of action, holding that the defendant was entitled to the absolute defense of impairment provided by MCL 600.2955a because there was sufficient evidence from which the jury could conclude that the plaintiff was fifty percent or more the cause of the event that resulted in the injury. In so holding, this Court explained:

> Issues of statutory construction present questions of law and receive review de novo. *Oakland Co Bd of Co Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n,* 456 Mich 590, 610; 575 NW2d 751 (1998). Every word or phrase of a statute will be assigned its plain and ordinary meaning unless defined in the statute. See MCL 8.3a; *Robertson v DaimlerChrysler Corp,* 465 Mich 732, 748; 641 NW2d 567 (2002). We may consult dictionary definitions when terms are not expressly defined by statute. *Oakland Co, supra* at 604. "Event" means "something that happens or is regarded as happening; an occurrence, especially one of some importance" or "the outcome, issue, or result of anything." *The Random House Dictionary of the English Language: Unabridged Second Edition* (1998), p 671.

> Given this broad definition, there was evidence from which the jury could conclude that plaintiff was fifty percent, or more, the cause of the "event" that resulted in the injury. Plaintiff, who was over eighteen years of age but

under the legal drinking age of twenty-one, elected to consume alcohol and become intoxicated. Plaintiff freely chose to accept a ride home from an intoxicated driver. Plaintiff also chose to ride in an automobile that did not have proper seating or restraints in the rear compartment and was filled with unrestrained materials including a tire and several tools. Under these circumstances, defendant was entitled to the absolute defense of impairment, and the judgment of no cause of action must be affirmed. [*Piccalo, supra* at 679-680.]

In this case, the expert medical witnesses uniformly agreed that withdrawal is the natural and expected, even inevitable, outcome of excessive alcohol consumption. However, the testimony of these experts also indicated that withdrawal, although caused by drinking alcohol, is a process or syndrome distinct from alcohol consumption; withdrawal has a detectable onset, is manifested by specific symptoms, and eventually passes. Therefore, as the trial court properly concluded, alcohol withdrawal meets the broad definition of an "event," as defined in *Piccalo* for the purposes of MCL 600.2955a(1).

Plaintiff further argues that this Court's reasoning in *Shinholster v Annapolis Hosp*, 255 Mich App 339; 660 NW2d 361 (2003), aff'd in part and rev'd in part, 471 Mich 540 (2004), mandates reversal of the trial court's order directing a verdict in defendant's favor. In *Shinholster*, a medical malpractice case, this Court ruled that the trial court did not err in limiting the jury's consideration of the plaintiff's decedent's comparative negligence (i.e., the decedent's failure to follow doctors' orders or take prescribed medication) to the period following her first visit to the defendant hospital. Specifically, this Court held that the defendant could not argue that the plaintiff was comparatively negligent by creating the condition that caused the plaintiff to

seek treatment. *Shinholster*, 255 Mich App 342-348. "Given the preventable nature of many illnesses, to accept the contrary position would allow many health-care professionals to escape liability for negligently treating ill patients." *Id.* at 348. Plaintiff herein argues that *Shinholster* dictates that the decedent's conduct before his incarceration should not be considered in determining the issue of malpractice or the apportionment of damages. We disagree.

Initially, we note that MCL 600.2955a was not at issue in *Shinholster*. That case involved an interpretation of MCL 600.6304. Moreover, on further appeal, our Supreme Court overruled in pertinent part this Court's holding in *Shinholster*, concluding that, pursuant to MCL 600.6304, the trier of fact in a medical malpractice action may consider a plaintiff's pretreatment negligence in offsetting a defendant's fault, where reasonable minds could differ with regard to whether such negligence constituted a proximate cause of the plaintiff's injury and damages. *Shinholster,* 471 Mich 551-552. Thus, the Supreme Court ultimately held that the trier of fact may reduce a plaintiff's recovery on the basis of the plaintiff's own contributions to his or her injury. Plaintiff's reliance on *Shinholster* is therefore misplaced and inapplicable to the facts of this case.

Indeed, as this Court has explained in *Wysocki,* the absolute defense of impairment provided by MCL 600.2955a serves a unique legislative purpose. In *Wysocki,* the plaintiff was leaning on the railing of a home deck constructed four years before the incident, when the railing gave way and the plaintiff was injured. At the time of the accident, plaintiff had a blood alcohol level of 0.21 percent. Plaintiff sued on the basis of premises liability and negligent design and construction of the deck. At trial, the jury found that plaintiff was

fifty percent or more at fault because of intoxication, barring his recovery under MCL 600.2955a. The jury's verdict of no cause of action was affirmed on appeal to this Court. In affirming the judgment in favor of the defendants, the *Wysocki* Court first noted the Legislature's objective in enacting the intoxication statute:

> Rather plainly, the intoxication statute sought to place more responsibility on intoxicated plaintiffs who are equally or more to .blame for their injuries, therefore marking a shift toward personal responsibility envisioned by overall tort reform. This legislative intent is clear from the language of the statute itself, which bars recovery for some intoxicated plaintiffs and reduces recovery for other intoxicated plaintiffs.
>
> The 1995 tort reform package was a series of bills that overhauled the tort system in Michigan. To this end, the Legislature enacted several laws that abolished joint and several liability, imposed damages caps on pain and suffering, and—in the intoxication statute—limited intoxicated plaintiffs' recovery.
>
> * * *
>
> Here, the Legislature did not act without consideration of principles or circumstances in enacting the intoxication statute. If a plaintiff is half or more at fault because of that plaintiff's own voluntary intoxication, then shifting the burden from the defendant to the plaintiff who was at least [fifty percent] or more responsible aligns with beneficial principles and societal circumstances. [*Wysocki, supra* at 358-359.]

The *Wysocki* Court then rebuffed the plaintiff's challenges to the constitutionality of the statute, stating:

> While the enactments [of the 1995 tort reform package], for the most part, are indicative of a comparative fault system, rather clearly the Legislature intended to exclude intoxicated or drug-affected plaintiffs from that comparative fault system if their fault was more than fifty percent the cause of their injuries . . . .

* * *

> We note that those who voluntarily become intoxicated have historically been considered to have put themselves, and others, at risk of injury. We further note that other jurisdictions have followed the reasoning that intoxicated persons should be limited or barred from recovery under state dramshop acts.

* * *

> The intoxication statute abrogates common-law comparative negligence and bars any recovery by Wysocki. Regardless of the percentage of *defendant's* negligence, if that percentage was under fifty percent the cause of Wysocki's injuries, it is irrelevant under the intoxication statute. A defendant's negligence would only be useful in determining proportional fault if a plaintiff's intoxication was less than fifty percent the cause of the accident and the plaintiff was, therefore, allowed limited recovery under the intoxication statute. [*Id.* at 364, 368, 371-372 (emphasis in original).]

In an analogous area of the law, our Supreme Court in *Robinson v Detroit*, 462 Mich 439, 445-446; 613 NW2d 307 (2000), held that the phrase "the proximate cause" contained in the governmental immunity act, MCL 691.1407(2), means *the* proximate cause, not *a* proximate cause. Further, the *Robinson* Court defined "the proximate cause" as "the one most immediate, efficient, and direct cause preceding an injury, not 'a proximate cause.' " *Id.* at 446. Similarly, the intoxication statute "refers only to 'the' cause of the incident rather than 'a' cause . . . ." *Wysocki, supra* at 370.

Applying *Wysocki* and, by analogy, *Robinson* to the present facts, it is clear that plaintiff's theory of the case, based on principles of comparative negligence (i.e., defendant could have prevented the decedent's death had its employee taken appropriate medical action), fails under the circumstances. Here, it is undisputed

that when the decedent was arrested for driving while under the influence, with a blood alcohol level of 0.32 grams, he had "an impaired ability to function due to the influence of intoxicating liquor." MCL 600.2955a(2)(b). Under these circumstances, reasonable minds could not differ that, as a result of that impairment, the decedent was fifty percent or more the cause of the "event"—acute alcohol withdrawal—that resulted in his death. Plaintiff's own evidence was unequivocal that the decedent's chronic alcohol abuse and, on the night in question, his alcohol-related impairment caused the acute withdrawal that was the "most immediate, efficient, and direct cause" of his death. *Robinson, supra* at 446. It is of no consequence that plaintiff argues that the decedent's death could have been prevented by nurse Froehlich, because the decedent's self-induced intoxication was fifty percent or more *the* cause of his death. *Wysocki, supra.* Additionally, plaintiff's expert, Dr. Dragovic, admitted that what might have happened to the decedent had nurse Froehlich treated him differently is pure speculation and that it would have been an illusion for anyone who never had a chance to examine Mr. Harbour to envision exactly what would have happened if he had survived or if he had been taken to an emergency room. As a matter of law, defendant satisfied the requisite elements of MCL 600.2955a and was entitled to the absolute defense provided by that statute. To conclude otherwise would contradict the express language of the statute and its underlying purpose. Therefore, we hold that, pursuant to MCL 600.2955a, and consistently with *Wysocki* and *Piccalo* the trial court properly granted defendant's motion for a directed verdict.

III

In Docket No. 257012, defendant contends that the trial court abused its discretion by refusing to award

defendant case evaluation sanctions pursuant to MCR 2.403(O). Defendant sought approximately $90,000 in costs and attorney fees. Defendant moved for case evaluation sanctions pursuant to MCR 2.403(O) on the ground that plaintiff rejected the case evaluation award of $75,000 and failed to obtain a verdict more than ten percent greater than the award. However, following a hearing on the matter, the trial court denied defendant's motion for sanctions on the basis of MCR 2.403(O)(11), the "interest of justice" exception, because it opined that the dispositive motion based on MCL 600.2955a should have been raised by defendant earlier during the proceedings. The trial court stated:

> The purpose of case evaluation was to encourage settlement of a protracted litigation and expedite and simplify the final settlement of cases. . . .
>
> In this case, . . . the motion for directed verdict was brought for the first time to this Court's attention on a statutory preclusion for the cause of action at the close of plaintiff's proofs. I inquired as to why at that time the motion was not brought sooner, since other motions for summary disposition were brought and denied by this Court. The record will reflect that at that time counsel explained that they did not wish to give opposing counsel an opportunity to respond and did not trust the Court's decision had it been done prior to the close of proofs. That being the case, the interest[s] of justice are not served.
>
> * * *
>
> [T]he decision not to bring this matter [sooner] was unwarranted and unjustified.

The trial court thereafter denied defendant's motion for reconsideration, reiterating that defendant's election to continue the litigation process, despite being cognizant of the viable defense provided by MCL 600.2955a, and to deliberately wait until after plain-

tiff's presentation of proofs and five days of trial to present the dispositive motion was contrary to the purpose of MCR 2.403(O)(11) and was the cause of protracted litigation and expenses incurred following case evaluation.

A trial court's decision to grant or deny case evaluation sanctions is subject to review de novo on appeal. *Elia v Hazen*, 242 Mich App 374, 376-377; 619 NW2d 1 (2000). However, because a trial court's decision whether to award costs pursuant to the "interest of justice" provision set forth in MCR 2.403(O)(11) is discretionary, this Court reviews that decision for an abuse of discretion. *Campbell v Sullins*, 257 Mich App 179, 205 n 9; 667 NW2d 887 (2003). An abuse of discretion may be found only when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. *Dep't of Transportation v Randolph*, 461 Mich 757, 768; 610 NW2d 893 (2000).

MCR 2.403(O) provides in pertinent parts:

> (1) If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. However, if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation.

> (2) For the purpose of this rule "verdict" includes,

> \* \* \*

> (c) a judgment entered as a result of a ruling on a motion after rejection of the case evaluation.

> \* \* \*

(11) If the "verdict" is the result of a motion as provided by subrule (O)(2)(c), the court may, *in the interest of justice*, refuse to award actual costs. [Emphasis added.]

Thus, pursuant to MCR 2.403(O)(11), a trial court may refuse to award sanctions in the "interest of justice" if the verdict is the result of a judgment stemming from a ruling on a motion after rejection of the case evaluation.

In *Haliw v Sterling Hts*, 257 Mich App 689, 705-709; 669 NW2d 563 (2003), rev'd on other grounds, 471 Mich 700 (2005), this Court interpreted MCR 2.403(O)(11) by reference to the analogous "interest of justice" exception found in the offer of judgment rule, MCR 2.405(D)(3), because both court rules "serve identical purposes of deterring protracted litigation and encouraging settlement." 257 Mich App at 706. The Court of Appeals in *Haliw* held that the "interest of justice" exception should be invoked only in "unusual circumstances," such as where a legal issue of first impression or public interest is present, " 'where the law is unsettled and substantial damages are at issue,' " where there is a significant financial disparity between the parties, or " 'where the effect on third persons may be significant.' " 257 Mich App at 707, quoting *Luidens v 63rd Dist Court*, 219 Mich App 24, 36; 555 NW2d 709 (1996) (citation deleted). These factors are not exclusive. 257 Mich App at 707. " 'Other circumstances, including misconduct on the part of the prevailing party, may also trigger this exception.' " *Id.* quoting *Luidens, supra* at 36.

The *Haliw* Court further noted that in *Stitt v Holland Abundant Life Fellowship (On Remand)*, 243 Mich App 461; 624 NW2d 427 (2000), this Court, construing the "interest of justice" provision of MCR 2.405(D)(3), held that the combination of two "unusual circumstances"—the unsettled nature of the law and

the "gamesmanship" evidenced by the considerable disparity between the rejected mediation evaluation and defendant's offer of judgment—warranted invocation of the "interest of justice" exception under the circumstances of the case. 257 Mich App at 707-708. The *Haliw* Court concluded that "if the trial court finds on the basis of all the facts and circumstances of a particular case and viewed in light of the purposes of MCR 2.403(O) that unusual circumstances exist, it may invoke the 'interest of justice' exception found in MCR 2.403(O)(11)." *Id.* at 709.

In this case, the trial court refused to award case evaluation sanctions on the ground that, "much to the Court's disappointment," defendant could have brought its motion to dismiss pursuant to MCL 600.2955a at the same time it brought numerous other motions for summary disposition and, thus, could have avoided the need for plaintiff and the court to expend time and resources on litigation that might have been unnecessary from the outset. Indeed, defendant admitted on the record that it deliberately waited until the close of plaintiff's case in order to prevent plaintiff from being able to defeat an earlier motion for summary disposition by filing affidavits contradicting her experts' sworn deposition testimony, despite the fact that "[p]arties may not create factual issues by merely asserting the contrary in an affidavit after giving damaging testimony in a deposition." *Downer v Detroit Receiving Hosp*, 191 Mich App 232, 234; 477 NW2d 146 (1991). Apparently, defendant doubted the trial court's ability to perceive a discrepancy between plaintiff's experts' sworn deposition testimony and affidavits.

Assuming that defendant had raised MCL 600.2955a earlier, and further assuming that plaintiff had indeed filed the affidavits as defendant alleges, the trial court

might have found a genuine issue of material fact necessitating a trial. However, defendant's failure to do so *guaranteed* the need for a five-day jury trial. Defendant made a tactical decision to incur additional costs that may not have been necessary. In construing the analogous "interest of justice" provision of the offer of judgment rule, MCR 2.405(D)(3), this Court in *Luidens, supra* at 35, aptly noted that "evidence of such gamesmanship . . . constitutes a relevant factor in determining whether the exception applies."

We conclude that, under the circumstances, the trial court did not abuse its discretion in finding defendant's trial strategy to be a sufficiently "unusual circumstance" to warrant invocation of the "interest of justice" exception. The trial court's conclusion that defendant's actions constituted "gamesmanship" that was unnecessarily costly to plaintiff, making unjust defendant's recovery of expenses it elected to create, is not " 'so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.' " *Dep't of Transportation, supra* at 768, quoting *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 227; 600 NW2d 638 (1999) (citations deleted). We therefore affirm the trial court's order denying defendant's motion for case evaluation sanctions.

In her supplemental brief filed in this appeal, plaintiff, for the first time, claims that defendant waived the defense of MCL 600.2955a by failing to plead it as an affirmative defense as required by MCR 2.111(F)(3). However, because this issue was not raised before or presented to the trial court, it is not properly preserved for appellate review, and we decline to address it. *Booth*

*Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993); *City of Taylor v Detroit Edison Co*, 263 Mich App 551, 560; 689 NW2d 482 (2004).

Affirmed.