*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JASON WILLIAM MYERS,

Plaintiff-Appellant,

v

ANTONIO'S OF DEARBORN HEIGHTS, INC.,
doing business as ANTONIO'S CUCINA
ITALIANA,

Defendant-Appellee.

UNPUBLISHED
February 20, 2020

No.   345673
Wayne Circuit Court
LC No.   16-012484-CZ

JASON WILLIAM MYERS,

Plaintiff-Appellee,

v

ANTONIO'S OF DEARBORN HEIGHTS, INC.,
doing business as ANTONIO'S CUCINA
ITALIANA,

Defendant-Appellant.

No.   346089
Wayne Circuit Court
LC No.   16-012484-CZ

Before:  REDFORD, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Plaintiff brought this action against defendant, Antonio's of Dearborn Heights, Inc., alleging that defendant violated the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq*., when it denied him service at defendant's restaurant because he was accompanied by a service dog.  Following a bench trial, the trial court entered a judgment for defendant of no cause of action.  The court denied plaintiff's posttrial motion for judgment notwithstanding the verdict (JNOV) or a new trial.  The court also denied defendant's motion for case evaluation sanctions.  In Docket No. 345673, plaintiff appeals as of right the judgment of no cause of action.

-1-

In Docket No. 346089, defendant appeals as of right the order denying case evaluation sanctions. We affirm the judgment for defendant, but reverse the order denying defendant's motion for case evaluation sanctions and remand for determination of an appropriate award of case evaluation sanctions under MCR 2.403(O)(6).

## I. FACTS AND PROCEEDINGS

Plaintiff, a veteran of the United States Navy, was discharged from active duty. The United States Department of Veterans Affairs determined he is a service disabled veteran with a 100% disability rating. Because of his disability plaintiff relies on a service dog, Annabelle, when he goes out in public. The service dog is trained to divert and redirect plaintiff in stressful situations, to prevent him from having angry outbursts. Defendant operates a restaurant, Antonio's Cucina Italiana (Antonio's), in Dearborn Heights. On January 20, 2016, plaintiff and his mother, Jane Montgomery, visited Antonio's for dinner after attending the North American Auto Show. Defendant brought Annabelle. The host on duty, Edward Van Arsdale, asked plaintiff for certification that the dog was a service dog. Plaintiff removed the metal tag from the dog's collar and gave it to Van Arsdale while Montgomery went to plaintiff's vehicle to obtain documents certifying the dog's status as a service dog. Van Arsdale consulted the restaurant's manager, Mark Rugiero, who came to the host stand. The parties dispute the events that followed. According to Van Arsdale and Rugiero, plaintiff angrily shoved the dog tag in Rugiero's face and yelled that he had the right to bring the dog into the restaurant. Van Arsdale and Rugiero deny that they refused to seat plaintiff and his dog. They claim that when Montgomery returned with the dog's documents, plaintiff stated, "Mother, we're leaving" and left the restaurant before Rugiero could respond. According to plaintiff, Rugiero told him that he and the dog could not be seated because seeing-eye dogs were the only service dogs allowed in the restaurant. Plaintiff testified that Rugiero took him by the arm and escorted him out.

Plaintiff's complaint alleged that he had a disability that required him to rely on a service dog that aided his ability to function and reduced his anxiety. He alleged that defendant violated the PWDCRA by refusing to allow him to be served at the restaurant with the service dog, in violation of his right to public accommodation under the PWDCRA. Specifically, plaintiff alleged that defendant violated its "duty to allow access and full accommodation" to plaintiff with the service dog and "intentionally and willfully refused to grant full and public accommodation" to plaintiff.

Following a bench trial, the trial court found that the testimony of plaintiff and Montgomery was only "partially credible." Conversely, the court found that Van Arsdale and Rugiero were credible in their testimony that the dog was not wearing a service vest. The court found that defendant made a good-faith request for documentation that the dog was a service dog, and that plaintiff abandoned his claim for service by leaving the restaurant before the dog's status was confirmed. The court therefore concluded that plaintiff failed to prove by a preponderance of the evidence that defendant refused him service. Accordingly, the trial court entered a judgment in favor of defendant of no cause of action. However, the court denied defendant's request for costs or fees under MCR 2.625(A)(1) on the ground that plaintiff's claim "involved unsettled areas of the law as well as an issue of significant public interest and concern."

Plaintiff thereafter filed a motion for JNOV, alleging that MCL 750.502c, a penal statute, defined defendant's legal duties regarding disabled persons and service animals, and that the evidence established that defendant violated this statute by requesting documentation of his dog's status as a service animal. The trial court concluded that plaintiff's reliance on MCL 750.502c was "misplaced" because plaintiff failed to plead this alleged violation in support of his cause of action, and because the statute did not establish a private cause of action in any event. Accordingly, the court denied plaintiff's motion for JNOV.

Defendant filed a motion for case evaluation sanctions, arguing that it was entitled to sanctions under MCR 2.403(O) because plaintiff had rejected the case evaluation award of $5,000 and thereafter received a less favorable verdict of no cause of action. The trial court denied the motion on the ground that plaintiff's lawsuit "involved unsettled areas of the law as well as an issue of significant public interest and concern."

## II. MCL 750.502c

Plaintiff argues that the trial court erred by refusing to recognize defendant's violation of MCL 750.502c as a basis for imposing liability against defendant. We disagree.

"Following a bench trial, we review a trial court's factual findings for clear error and its conclusions of law de novo." *Scholma v Ottawa Co Rd Comm*, 303 Mich App 12, 16; 840 NW2d 186 (2013). A trial court's decision to deny a motion for JNOV is reviewed de novo. *Freed v Salas*, 286 Mich App 300, 322; 780 NW2d 844 (2009). The evidence and all legitimate inferences arising from the evidence must be viewed in the light most favorable to the nonmoving party to determine whether the moving party is entitled to judgment as a matter of law. *Id.* Issues concerning the proper interpretation and application of a statute are reviewed de novo. *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012).

The PWDCRA prohibits discrimination as follows:

> (1) The opportunity to obtain employment, housing, and other real estate and full and equal utilization of public accommodations, public services, and ]educational facilities without discrimination because of a disability is guaranteed by this act and is a civil right.

> (2) Except as otherwise provided in article 2, a person shall accommodate a person with a disability for purposes of employment, public accommodation, public service, education, or housing unless the person demonstrates that the accommodation would impose an undue hardship. [MCL 37.1102.]

In addition, a place of public accommodation shall not deny a disabled individual "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the . . . accommodations or because of the use by an individual of adaptive devices or aids." MCL 37.1302(a). " 'Place of public accommodation' means a business . . . whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public." MCL 37.1301(a).

-3-

The PWDCRA does not contain any references to service animals. It provides no definitions, requirements, or prohibitions concerning dogs or service animals. As plaintiff observes, service dogs are addressed in the Michigan Penal Code in MCL 750.502c, which provides:

> (1) Except as otherwise provided in subsection (2), a public accommodation shall modify its policies, practices, and procedures to permit the use of a service animal by a person with a disability. . . .

> (2) A public accommodation shall not ask a person with a disability to remove a service animal from the premises due to allergies or fear of the animal. A public accommodation may only ask a person with a disability to remove his or her service animal from the premises if either of the following applies:

> (a) The service animal is out of control and its handler does not take effective action to control it.

> (b) The service animal is not housebroken.

> * * *

> (4) A service animal shall be under the control of its handler, and shall have a harness, leash, or other tether, unless the handler is unable because of a disability to use a harness, leash, or other tether or the use of a harness, leash, or other tether would interfere with the service animal's safe and effective performance of work or tasks, in which case the service animal shall be otherwise under the handler's control. As used in this subsection, "otherwise under the handler's control" includes, but is not limited to, voice control or signals.

> (5) A public accommodation is not responsible for the care or supervision of a service animal.

> (6) If it is not obvious what service a service animal provides, staff of a public accommodation shall not ask about a person with a disability's disability, require medical documentation, require a special identification card or training documentation for the service animal, or ask that the service animal demonstrate its ability to perform work or a task. Subject to subsection (7), staff may make the following 2 inquiries to determine whether an animal qualifies as a service animal:

> (a) Whether the service animal is required because of a disability.

> (b) What work or task the service animal has been trained to perform.

> (7) A public accommodation shall not do either of the following:

> (a) Require documentation when making an inquiry under subsection (6).

-4-

(b) Make an inquiry under subsection (6) if it is readily apparent that the service animal is trained to do work or perform tasks for an individual with a disability.

(8) A person with a disability shall be permitted to be accompanied by his or her service animal in all areas of a place of public accommodation where members of the public, program participants, clients, customers, patrons, or invitees are permitted to go, including public areas of establishments that sell or prepare food, even if state or local health codes prohibit animals on the premises. A public accommodation may exclude a service animal from a facility if the service animal's presence interferes with legitimate safety requirements of the facility such as a surgery or burn unit in a hospital in which a sterile field is required.

(9) A public accommodation shall not isolate a person with a disability accompanied by his or her service animal, treat a person with a disability accompanied by his or her service animal less favorably than other patrons, or charge a fee to a person with a disability accompanied by his or her service animal that is not charged to other patrons without service animals. A public accommodation shall not ask or require a person with a disability to pay a surcharge, regardless of whether people accompanied by pets are required to pay a surcharge, or to comply with other requirements that are not applicable to people without pets. If a public accommodation normally charges people for damage caused, the public accommodation may charge a person with a disability for damage caused by his or her service animal.

(10) A public accommodation that violates subsections (1), (3), or (6) to (9) is guilty of a misdemeanor.

(11) As used in this section:

(a) "Facility" means that term as defined in 28 CFR 36.104.

(b) "Person with a disability" means a person who has a disability as defined in section 12102 of the Americans with disabilities act of 1990, 42 USC 12102, and 28 CFR 36.104.

(c) As used in subdivision (b), "person with a disability" includes a veteran who has been diagnosed with 1 or more of the following:

(*i*) Post-traumatic stress disorder.

(*ii*) Traumatic brain injury.

(*iii*) Other service-related disabilities.

(d) "Place of public accommodation" means that term as defined in 28 CFR 36.104.

(e) "Public accommodation" means that term as defined in section 12181 of the Americans with disabilities act of 1990, 42 USC 12181, and 28 CFR 36.104.

(f) "Service animal" means all of the following:

(*i*) That term as defined in 28 CFR 36.104.[1]

(*ii*) A miniature horse that has been individually trained to do work or perform tasks as described in 28 CFR 36.104 for the benefit of a person with a disability.

(g) "Veteran" means any of the following:

(*i*) A person who performed military service in the armed forces for a period of more than 90 days and separated from the armed forces in a manner other than a dishonorable discharge.

(*ii*) A person discharged or released from military service because of a service-related disability.

(*iii*) A member of a reserve branch of the armed forces at the time he or she was ordered to military service during a period of war, or in a campaign or expedition for which a campaign badge is authorized, and was released from military service in a manner other than a dishonorable discharge.

---

[1] 28 CFR 36.104 provides:

Service animal means any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. Other species of animals, whether wild or domestic, trained or untrained, are not service animals for the purposes of this definition. The work or tasks performed by a service animal must be directly related to the individual's disability. Examples of work or tasks include, but are not limited to, assisting individuals who are blind or have low vision with navigation and other tasks, alerting individuals who are deaf or hard of hearing to the presence of people or sounds, providing non-violent protection or rescue work, pulling a wheelchair, assisting an individual during a seizure, alerting individuals to the presence of allergens, retrieving items such as medicine or the telephone, providing physical support and assistance with balance and stability to individuals with mobility disabilities, and helping persons with psychiatric and neurological disabilities by preventing or interrupting impulsive or destructive behaviors. The crime deterrent effects of an animal's presence and the provision of emotional support, well-being, comfort, or companionship do not constitute work or tasks for the purposes of this definition.

A prior version of MCL 750.502c prohibited exclusion of a service animal if "the guide or leader dog is wearing a harness or if the hearing dog or service dog is wearing a blaze orange leash and collar, hearing dog cape, or service dog backpack, and the person with disabilities being led or accompanied has in his or her possession a pictured identification card certifying that the dog was trained by a qualified organization or trainer." See MCL 750.502c(1), as amended by 1998 PA 38. These conditions were removed by 2015 PA 144, which became effective January 18, 2016, two days before the incident in defendant's restaurant. Under the amended statute, where it is not obvious what service a service animal provides, a public accommodation may make limited inquiry regarding whether the service animal is required because of a disability and what work or task the service animal has been trained to perform, but may not require a special identification card or training documentation for the service animal. MCL 750.502c(6).

Plaintiff first raised the issue of defendant's alleged violation of MCL 750.502c in his motion for JNOV. Plaintiff argued that he was entitled to JNOV because the evidence at trial established that defendant violated MCL 750.502c(6) by requesting documentation of his dog's service-animal status. The trial court rejected plaintiff's argument because (1) plaintiff failed to plead or pursue this theory of liability at trial, and (2) MCL 750.502c is a penal statute that does not establish a private cause of action. The trial court properly ruled that plaintiff was not entitled to relief because he failed to plead or pursue a theory of liability based on a violation of MCL 750.502c at or before trial. Therefore, it is unnecessary to determine if a violation of the statute can support a private cause of action.

Plaintiff's complaint did not allege a theory of liability based on an alleged violation of MCL 750.502c. His complaint cited the PWDCRA in support of his claim for disability discrimination. Plaintiff argues that it was not necessary to specifically cite MCL 750.502c under Michigan's fact-based pleading rules. Under Michigan's pleading requirements, a plaintiff is not required to cite a specific statutory basis for imposing liability on a defendant. *Rymal v Baergen*, 262 Mich App 274, 301 n 6; 686 NW2d 241 (2004). MCR 2.111(B)(1) requires that a complaint contain "[a] statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend . . . ." Plaintiff's complaint alleged that he had a disability that required him to rely on a service dog that aided his ability to function and reduced his anxiety. He alleged that defendant violated the PWDCRA by refusing to allow him to be served at the restaurant with the service dog, in violation of his right to public accommodation under the PWDCRA. More specifically, he alleged that defendant violated its "duty to allow access and full accommodation" to plaintiff with the service dog and that defendant "intentionally and willfully refused to grant full and public accommodation" to plaintiff. Plaintiff did not allege that defendant requested documentation of the service dog's status, or that defendant could incur liability by making such a request. Thus, to the extent that plaintiff seeks to impose liability on defendant for making an inquiry regarding his dog's status as a service dog, plaintiff's pleadings were insufficient to inform defendant that it would be called upon to defend such a claim.

We note that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they are treated as if they had been raised by the pleadings." MCR 2.118(C)(1). In this case, however, plaintiff did not pursue at trial a theory of liability based on defendant's request for documentation regarding his dog's status as a service dog. The factual issue at trial was whether defendant violated the PWDCRA by denying plaintiff service on the

basis of his use of an assistive device, namely, the service dog. Plaintiff did not argue that defendant was liable for discrimination because defendant's employees made inquiries prohibited by MCL 750.502c. The trial court found that there was no denial of service because plaintiff voluntarily chose to leave the restaurant before defendant's agents were able to determine whether the dog was a service dog entitled to accommodation. This finding was based on the trial court's determinations that plaintiff and Montgomery were not entirely credible, and that defendant's witnesses credibly testified that plaintiff left the restaurant of his own accord, without having been denied service. The court disbelieved plaintiff's testimony that Rugiero told plaintiff that he would not be seated. "This Court affords great deference to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Augustine v Allstate Ins Co*, 292 Mich App 408, 424-425; 807 NW2d 77 (2011). Indeed, plaintiff does not challenge the trial court's factual findings on appeal. In sum, the theory of liability raised in plaintiff's motion for JNOV was neither expressly nor implicitly pursued at trial.

Plaintiff argues that the trial court was required to take judicial notice of MCL 750.502c. MRE 202 provides:

> **(a) When Discretionary.** A court may take judicial notice without request by a party of (1) the common law, constitutions, and public statutes in force in every state, territory, and jurisdiction of the United States; (2) private acts and resolutions of the Congress of the United States and of the Legislature of Michigan, and ordinances and regulations of governmental subdivisions or agencies of Michigan; and (3) the laws of foreign countries.

> **(b) When Conditionally Mandatory.** A court shall take judicial notice of each matter specified in paragraph (a) of this rule if a party requests it and (1) furnishes the court sufficient information to enable it properly to comply with the request and (2) has given each adverse party such notice as the court may require to enable the adverse party to prepare to meet the request.

The trial court was not required to take judicial notice of MCL 750.502c under MRE 202(b) because plaintiff did not request it. Although MRE 202(a) gave the court discretion to take judicial notice of MCL 750.502c even without a request, because plaintiff did not plead or pursue a theory of liability on the basis that defendant made an impermissible inquiry for the service animal's documentation, the trial court's failure to take judicial notice of MCL 750.502c cannot be characterized as an abuse of discretion. *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 604; 886 NW2d 135 (2016) (a court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes). Accordingly, plaintiff's judicial-notice argument is without merit.

In sum, because plaintiff's motion for JNOV was based on a theory of liability that was not alleged in plaintiff's complaint or pursued at trial, the trial court did not err by denying plaintiff's motion for JNOV. Further, plaintiff has not otherwise established that the trial court erred by finding that defendant did not refuse to serve plaintiff because he was accompanied by a service dog, and thus did not violate the PWDCRA. Accordingly, we affirm the judgment of no cause of action.

### III. CASE EVALUATION SANCTIONS

Defendant argues that the trial court erred by denying its motion for case evaluation sanctions under MCR 2.403(O). We agree.

"A trial court's decision whether to grant case evaluation sanctions under MCR 2.403(O) presents a question of law, which this Court reviews de novo." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). A trial court's decision to deny case evaluation sanctions under the interest-of-justice exception in MCR 2.403(O)(11) is reviewed for an abuse of discretion. *Harbour v Correctional Med Servs, Inc*, 266 Mich App 452, 465; 702 NW2d 671 (2005).

Under the general "American rule," attorney fees are not recoverable unless authorized by a statute, court rule, or common-law exception. *Smith*, 481 Mich at 526. MCR 2.403(O) imposes a sanction on parties who reject a case evaluation award and subsequently fail to obtain a more favorable verdict. MCR 2.403(O)(1) provides:

> If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. However, if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation.

For purposes of Subrule (O)(1), a verdict includes:

> (a) a jury verdict,
>
> (b) a judgment by the court after a nonjury trial,
>
> (c) a judgment entered as a result of a ruling on a motion after rejection of the case evaluation. [MCR 2.403(O)(2).]

To determine if a verdict is more favorable than the case evaluation, the verdict "must be adjusted by adding to it assessable costs and interest on the amount of the verdict from the filing of the complaint to the date of the case evaluation . . . ." MCR 2.403(O)(3). "After this adjustment, the verdict is considered more favorable to a defendant if it is more than 10 percent below the evaluation . . . ." MCR 2.403(O)(3).

The bench trial verdict of no cause of action was not more favorable to plaintiff than the case evaluation award of $5,000. MCR 2.403(O)(1) provides that the rejecting party "*must* pay the opposing party's actual costs" if the verdict is less favorable. "The use of the word 'must' indicates that the imposition of these sanctions is mandatory." *Allard v State Farm Ins Co*, 271 Mich App 394, 272; 722 NW2d 268 (2006). The only exception to this mandatory imposition of sanctions is contained in MCR 2.403(O)(11), which states that "[i]f the 'verdict' is the result of a motion as provided by subrule (O)(2)(c), the court may, in the interest of justice, refuse to award actual costs." In this case, however, this exception was not applicable because the verdict was a judgment by the court entered after a nonjury trial, MCR 2.403(O)(2)(b); it was not the result of a

ruling on a motion.[2]  Accordingly, the trial court erred by denying defendant's motion for case evaluation sanctions.

Plaintiff argues that case evaluation sanctions cannot be awarded to a prevailing defendant in a civil rights action unless the plaintiff's action is found to be frivolous, unreasonable, or without foundation.  Plaintiff cites MCL 37.2802, which is part of the Elliott-Larsen Civil Rights Act and grants a trial court discretion to "award all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, to *the complainant* in the [civil rights] action if the court determines that the award is appropriate." (Emphasis added.)  Plaintiff's reliance on MCL 37.2802 is misplaced.  There is no language in MCL 37.2802 that precludes an award of case evaluation sanctions to a defendant under MCR 2.403(O).  In any event, plaintiff did not bring this action under the Michigan Civil Rights Act, but rather under the PWDCRA.  Plaintiff fails to cite any authority holding that case evaluation sanctions under MCR 2.403(O) are not available to a prevailing defendant in an action for violation of the PWDCRA.  Moreover, Michigan's case evaluation procedure applies generally to civil actions.  It provides no exception for PWDCRA or other civil rights actions.

Plaintiff urges this Court to adopt a "long established Federal Rule" of denying attorney fees to a prevailing defendant in a civil rights case unless the action is deemed frivolous, unreasonable, or without foundation.  47 USC 1988(b) provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" in actions to enforce the federal civil rights statutes enumerated in § 1988.  The United States Supreme Court has held "that § 1988 also authorizes a fee award to a prevailing defendant, but under a different standard reflecting the 'quite different equitable considerations' at stake." *Fox v Vice*, 563 US 826, 833; 131 S Ct 2205; 180 L Ed 2d 45 (2011), quoting *Christiansburg Garment Co v EEOC*, 434 US 412, 419; 98 S Ct 694; 54 L Ed 2d 648 (1978).  "Accordingly, § 1988 authorizes a district court to award attorney's fees to a defendant 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation.' " *Fox*, 563 US at 833, quoting *Christiansburg*, 434 US at 421.  This limitation on an award of attorney fees to a prevailing defendant in a federal civil rights action is based on an interpretation of 47 USC 1988, which differs from MCR 2.403(O).  The Supreme Court's interpretation of § 1988 has no application to MCR 2.403(O).

Finally, plaintiff's reliance on the interest-of-justice exception in MCR 2.405(D)(3) is also misplaced because that rule governs offers to stipulate to entry of judgment.  Defendant did not move for sanctions under that rule.

---

[2] There is no merit to plaintiff's argument that the trial court's verdict of no cause of action was, "in effect," an order granting summary disposition for defendant.  Indeed, the trial court denied defendant's earlier motion for summary disposition.  The trial court's judgment was entered on the basis of its findings of fact following a bench trial.

For these reasons, we reverse the trial court's order denying defendant's motion for case evaluation sanctions and remand this case for a determination of an appropriate award of sanctions under MCR 2.403(O)(6).

Affirmed in part, reversed in part, and remanded for a determination of case evaluation sanctions. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto