*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ISHA SIMPSON and RICHARD BOYD,

      Plaintiffs-Appellants,

v

AMERIPRISE INSURANCE COMPANY, APRIL
BRIGHTWELL, RONDREA GLASS, and JOHN
DOE,

      Defendants,

and

IDS PROPERTY CASUALTY INSURANCE
COMPANY,

      Defendant-Appellee.

UNPUBLISHED
November 12, 2020

Nos. 348279; 348977
Wayne Circuit Court
LC No. 17-010369-NF

Before: BOONSTRA, P.J., and CAVANAGH and BORRELLO, JJ.

PER CURIAM.

In Docket No. 348279, plaintiffs Isha Simpson (Simpson) and Richard Boyd (Boyd) appeal by right the trial court's order granting summary disposition under MCR 2.116(C)(10) in favor of defendant IDS Property Casualty Insurance Company (IDS).[1] In Docket No. 348977, plaintiffs appeal by right the trial court's order granting IDS's motion for attorney's fees and costs under

---

[1] Defendants April Brightwell and Rondrea Glass were dismissed from the case by stipulation of the parties. The disposition of the claims against defendants Ameriprise Insurance Company (which claims appear to have been initially dismissed by stipulation of the parties but reasserted by way of an amended complaint) and John Doe is unclear from the record provided to this Court. No defendants other than IDS are parties to this appeal.

both MCL 500.3148(2) (no-fault attorney's fees) and MCR 2.403(O)(11) (case evaluation sanctions). These appeals were consolidated by this Court.[2] We affirm in both appeals.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On February 22, 2017, Simpson and Boyd were involved in a motor vehicle accident. Boyd was driving a vehicle co-owned by Simpson and Aquanetta Terry (Terry), and Simpson was a passenger in the vehicle. The vehicle was insured under a no-fault policy issued by IDS jointly to Simpson and Terry. It is undisputed that at the time Simpson and Terry applied for insurance, as well as at the time of the accident, Simpson and Terry resided at separate addresses; Simpson lived in Redford and Terry lived in Detroit. Despite the separate addresses, the IDS insurance application listed only the Redford address. The application was signed by both plaintiffs. Boyd did not have a valid driver's license at the time of the accident.

After plaintiffs filed this action against IDS to recover no-fault personal protection insurance (PIP) benefits, IDS informed Simpson that it had rescinded the no-fault policy at issue, effective September 30, 2016, because its investigation had revealed that the insured vehicle was titled in the name of both Simpson and Terry, that Simpson and Terry were not related, and that Terry had never resided at the Redford address. IDS refunded premiums that Simpson had paid under the policy. IDS thereafter filed a motion for summary disposition under MCR 2.116(C)(10), arguing that it was entitled to rescind the no-fault policy because Simpson and Terry had misrepresented on the insurance application that they resided together and because, had the they been truthful, IDS would not have issued the policy. The trial court agreed and granted IDS's motion. Thereafter, IDS moved for attorney's fees under MCL 500.3148(2) and for case evaluation sanctions under MCR 2.403. The trial court awarded IDS attorney's fees of $69,580 and costs of $140 against Simpson under both MCL 500.3148 and MCR 2.403, and awarded IDS attorney's fees of $5,000 against Boyd under MCR 2.403.

These appeals followed. After the appeals were consolidated, IDS moved this Court to hold the consolidated appeals in abeyance until our Supreme Court either denied leave or granted leave to appeal and issued a final decision in *Northland Radiology, Inv v USAA Cas Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued June 18, 2020 (Docket No. 346345). The plaintiffs in *Northland Radiology* are healthcare providers to which Simpson had assigned her right to seek benefits under the no-fault act. *Id*., unpub op at 2. The *Northland Radiology* panel affirmed the trial court's order granting summary disposition in favor of IDS, thereby allowing IDS to rescind the policy. *Id*. This Court denied defendant's motion.[3]

---

[2] *Simpson v Ameriprise Ins Co*, unpublished order of the Court of Appeals, entered May 21, 2019 (Docket Nos. 348279, 348977).

[3] *Simpson v Ameriprise Ins Co*, unpublished order of the Court of Appeals, entered October 19, 2020 (Docket Nos. 348279, 348977).

## II. DOCKET NO. 348279

In Docket No. 348279, plaintiffs argue that the trial court erred by granting IDS's motion for summary disposition under MCR 2.116(C)(10) and allowing IDS to rescind the no-fault policy. We disagree.

We review de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A party seeking summary disposition under MCR 2.116(C)(10) must "specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact," and support the motion with "[a]ffidavits, depositions, admissions, or other documentary evidence." MCR 2.116(G)(3)(b) and (4); see also *Lowery v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016).

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. [*Lowrey*, 500 Mich at 5]. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson*, 502 Mich at 761 (quotation marks, citation, and brackets omitted). [*El-Khalil*, 504 Mich at 160.]

IDS rescinded the no-fault policy on the basis of the policy's antifraud clause, which states in relevant part:

> We do not provide coverage for any **insured** or person making claim under this policy who, whether before or after a loss, has:
>
> 1. Intentionally concealed or misrepresented any material fact or circumstance;
>
> 2. Engaged in fraudulent conduct; or
>
> 3. Made false statements
>
> relating to this insurance and/or in connection with any accident or loss for which coverage is sought under this policy.

Recently, in *Meemic Ins Co v Fortson*, ___ Mich ___, ___; ___ NW2d ___ (2020) (Docket No. 158302), our Supreme Court addressed an insurer's ability to rescind a no-fault policy on the basis of fraud. The Court considered whether the plaintiff insurance company's reliance on a policy's antifraud clause was valid in the context of the mandatory coverage required by the no-fault act, and held that "such contractual provisions are valid when based on a defense to mandatory coverage provided in the no-fault act itself or on a common-law defense that has not been abrogated by the act." *Id*. at ___; slip op at 1-2. The Court explained that the no-fault act "governs the coverage that it mandates," *id*. at ___; slip op at 6, but that "to the extent that common-

-3-

law defenses remain in force and effect," they can be applicable under certain circumstances to claims involving mandatory coverage, *id*. at ___; slip op at 9. The Court further stated:

> The caselaw [in Michigan] establishes that contractual terms are governed by the no-fault act, yet at the same time we have held that common-law defenses not abrogated by the no-fault act remain available in claims for mandatory coverage. The upshot is that insurers can avail themselves of both statutory defenses and common-law defenses that the no-fault act has not displaced. [*Id*. at ___; slip op at 10.]

The Court added:

> It would make little sense to say that an insurer can invoke common-law defenses when sued but cannot place those defenses in its contract. *By the same token, we have never indicated that an insurer's contract can go beyond either the statutory or common-law defenses and thereby limit mandatory coverage to a greater extent than either the statute or the common law. To allow such provisions would reduce the scope of the mandatory coverage required by the no-fault act, as supplemented by the common law. It would, in short, vitiate the act. This result is plainly prohibited by our longstanding caselaw that forbids parties from contracting to vitiate an insured's duty to promptly pay benefits as required by the no-fault act*. See, e.g., *Cruz v State Farm Mut Auto Ins Co*, 466 Mich 588, 598; 648 NW2d 591 (2002) (holding that when a contractual provision "contravenes the requirements of the no-fault act by imposing some greater obligation upon one or another of the parties, [it] is, to that extent, invalid"). *For these reasons, a provision in an insurance policy purporting to set forth defenses to mandatory coverage is only valid and enforceable to the extent it contains statutory defenses or common-law defenses that have not been abrogated*. [*Id*. at ___; slip op at 10-11 (emphasis added).]

Therefore, when "assessing [an insurer's] defense through the lens of [an] antifraud provision in [a] policy," the dispositive question is whether the defense is available under the no-fault act or is a common-law defense that has not been abrogated. *Id*. at ___; slip op at 11, 13 n 11. In *Meemic*, our Supreme Court, citing its earlier decision in *Titan Ins Co v Hyten*, 491 Mich 547; 817 NW2d 562 (2012), recognized that an insurer may avail itself of several common-law doctrines of fraud in an effort to seek rescission of a contract, so long as the fraud related to the inception of the contract; in other words, the contract must have been obtained as result of the fraud or misrepresentation. *Id*. at ___; slip op at 13-14, quoting Dobbs, Remedies (2d ed., abrg.), § 9.5, p. 716. ("At common law, the defrauded party could only seek rescission, or avoidance of the transaction, if the fraud related to the inducement to or inception of the contract.").[4]

---

[4] In *Titan*, 491 Mich at 555, the Supreme Court explained that there are three "interrelated but distinct" common-law doctrines that all fall under the umbrella of fraud: actionable fraud or

Simpson is a named insured under the no-fault policy, and her coverage is therefore mandatory under MCL 500.3114(1).[5] To the extent that IDS sought to rescind its no-fault policy on the basis of the antifraud provision, the antifraud provision is enforceable because the alleged fraud related to the procurement of the policy and consequently is based on a type of common-law fraud that would allow for rescission. *Meemic*, ___ Mich at ___; slip op at 1-2, 8, 10, 13-15; *Bazzi*, 502 Mich at 400-401, 406.

Plaintiffs argue on appeal that the trial court erred by concluding that there was no genuine issue of material fact concerning whether Simpson and Terry had engaged in fraud in the procurement of the no-fault policy, such that IDS was entitled to rescind the policy. In support of its claim that Simpson and Terry engaged in fraud, IDS argued that the insurance application listed both Simpson and Terry, represented that they both lived at the same address in Redford, Michigan,

---

fraudulent misrepresentation, innocent misrepresentation, and silent fraud. With respect to actionable fraud:

> [t]he general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery. [*Titan*, 491 Mich at 555 (citations omitted).]

Regarding innocent misrepresentation and silent fraud, our Supreme Court has explained that

> by a long line of cases, that if there was in fact a misrepresentation, though made innocently, and its deceptive influence was effective, the consequences to the plaintiff being as serious as though it had proceeded from a vicious purpose, he would have a right of action for the damages caused thereby either at law or in equity.

> Silent fraud has also long been recognized in Michigan. This doctrine holds that when there is a legal or equitable duty of disclosure, "[a] fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood, and courts have not hesitated to sustain recoveries where the truth has been suppressed with the intent to defraud." [*Titan*, 491 Mich at 556 (citations omitted).]

[5] Coverage with respect to Boyd, on the other hand, is not mandatory under MCR 500.3114(1). There is no indication in the record that Boyd was a spouse of a named insured, or a relative domiciled in the same household. During his deposition, Boyd described his relationship with Simpson as that of "friend[s]."

and did not indicate that Terry actually lived at a separate address in Detroit. The application asked the applicant to "[l]ist all drivers in your household, unless they have their own car and insurance" and listed Simpson as Driver 1 and Terry as Driver 2. Both Simpson and Terry signed the application, under the following statement:

> I have read and completed this application for insurance and declare to the best of my knowledge and belief all of the foregoing statements are true, and that these statements are offered as an inducement to the company to approve the policy for which I am applying.

In their depositions, both Simpson and Terry conceded that Terry had never lived at the Redford address.

The insurance application and Simpson's and Terry's deposition testimony establish that there was no genuine issue of material fact that Simpson and Terry did in fact misrepresent to IDS that Terry also lived at the Redford address, even if this representation was innocent. *Titan*, 491 Mich at 555-556. In their response to IDS's motion, plaintiffs did not present documentary evidence to create genuine issue of material fact on this point. See *Lowrey*, 500 Mich at 7 (recognizing that a nonmoving party is not permitted to simply rely on the allegations or denials in their pleadings, but must go "beyond the pleadings" and put forth specific facts that establish a genuine issue of material fact exists for trial). Although plaintiffs claimed, given the fact that the application did not specifically ask for each of their addresses, that there was no evidence that Simpson and Terry intentionally made false and material misrepresentations, the fact remains that the application listed both Simpson and Terry as applicants and listed the Redford address as their only address. Both Simpson and Terry testified that Terry resided at another address in Detroit, and it is undisputed that Terry's address was not provided to IDS, even though the application requested that Simpson and Terry list all drivers "in your household." Moreover, the undisputed testimony from an underwriter for IDS was that IDS would not have issued the joint no-fault policy if it had known that Simpson and Terry did not live in the same household. Therefore, the trial court did not err by concluding that there was no genuine issue of material fact concerning whether Simpson and Terry had engaged in fraud in the procurement of the no-fault policy. *Titan*, 491 Mich at 555-556.

Plaintiffs also argue that, at a minimum, the trial court erred by rescinding the policy with respect to Simpson, who actually did reside at the Redford address listed on the application. We disagree. Simpson and Terry both signed the application, which misrepresented that both women lived at the Redford address. Simpson did not misrepresent her own address, but did misrepresent that Terry was a member of her household and lived at that address. We conclude that the trial court did not err by concluding that the policy could be rescinded with regard to both Simpson and Terry.

For these reasons, we affirm the trial court's order granting IDS's motion for summary disposition and allowing IDS to rescind its no-fault policy.[6]  See *Bazzi*, 502 Mich at 412 (recognizing that an insurance policy procured by fraud on the part of the insured "is void *ab initio* due to the fraudulent manner in which it was acquired.").[7]

## III.  DOCKET NO. 348977

In Docket No. 348977, plaintiffs challenge the trial court's awards of attorney's fees to IDS under the no-fault act and as a sanction for rejecting the case evaluation award.  We affirm both awards.

## A.  AWARD OF ATTORNEY'S FEES UNDER MCL 500.3148(2)

Plaintiffs argue that the trial court erred by ruling that IDS was entitled to an award of attorney's fees against Simpson under MCL 500.3148(2), because, once the policy was rescinded, IDS was no longer legally entitled to such an award.  We disagree.

For an issue to be preserved, it must be raised, considered, and addressed by the trial court. *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 192; 920 NW2d 148 (2018).  Although plaintiffs generally opposed IDS's request for attorney's fees and costs under MCL 500.3148(2), they did not argue that IDS was not legally entitled to attorney's fees under MCL 500.3148(2) because, once the no-fault policy was rescinded, there could not be any "claim" for IDS to defend against within the meaning of the statute.  Accordingly, this appellate argument is unpreserved.  However, because the issue is one of law and the facts necessary for its resolution have been presented, we will consider it. *Jawad A Shah, MD*, 324 Mich App at 192-193.

This Court ordinarily reviews a trial court's decision whether to award attorney's fees under MCL 500.3148(2) for an abuse of discretion, its factual findings for clear error, and questions of law de novo, see *Gentris v State Farm Mut Auto Ins Co*, 297 Mich App 354, 361; 824 NW2d 609 (2012).  However, we review unpreserved claims of error for plain error affecting substantial rights. *Cove Creek Condo Ass'n v Vistal Land & Home Development, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket Nos. 342372 & 343144); slip op at 8, lv pending; *Hogg v Four Lakes Ass'n, Inc*, 307 Mich App 402, 406; 861 NW2d 341 (2014). *Id*.  We review de novo questions of statutory interpretation. *Ally Fin, Inc v State Treasurer*, 502 Mich 484, 491; 918 NW2d 662 (2018).

> When interpreting unambiguous statutory language, the statute must be enforced as written.  No further judicial construction is required or permitted.  Our goal is to give effect to the Legislature's intent, focusing first on the statute's plain language.  We must examine the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme.  In doing so, we consider the

---

[6] In light of this decision, it is unnecessary to consider IDS's reliance on the doctrine of collateral estoppel as an alternative basis for affirming the trial court's order.

[7] Plaintiffs do not challenge the trial court's balancing of the equities under *Bazzi*.

entire text, in view of its structure and of the physical and logical relation of its many parts. [*Id.* at 493 (citations, quotation marks, and alteration omitted).]

Plaintiffs argue that IDS was not required to defend against a fraudulent or excessive "claim" under MCR 500.3148(2), and therefore was not entitled to an award of attorney's fees. We disagree.

At the time the trial court entered its order awarding attorney's fees and costs on April 26, 2019, MCL 500.3148(2)[8] provided:

> An insurer may be allowed by a court an award of a reasonable sum against a claimant as an attorney's fee for the insurer's attorney in defense against *a claim* that was in some respect fraudulent or so excessive as to have no reasonable foundation. To the extent that personal or property protection insurance benefits are then due or thereafter come due to the claimant because of loss resulting from the injury on which the claim is based, such a fee may be treated as an offset against such benefits; also, judgment may be entered against the claimant for any amount of a fee awarded against him and not offset in this way or otherwise paid. [Emphasis added.]

In *Gentris*, 297 Mich App at 361-362, this Court acknowledged that MCL 500.3148(2) is permissive, and "does not mandate that the court award attorney's fees on a finding of fraud or excessiveness[.]"

In *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 195; 895 NW2d 490 (2017), our Supreme Court considered whether the no-fault act provides a medical provider with a statutory cause of action against a no-fault insurer to recover PIP benefits. The plaintiff, a medical provider, argued that MCL 500.3112 provided it with standing to pursue a direct cause of action against the no-fault insurer. *Covenant*, 500 Mich at 208. In its analysis of MCL 500.3112, the Court, in a footnote, referred to the dictionary definition of the word "claim," which is not defined in the no-fault act, and stated:

> Because the no-fault act does not define "claim," we may consult a dictionary definition. . . . The relevant dictionary definitions of "claim" include "a demand for something due or believed to be due" and "a right to something." *Merriam–Webster's Collegiate Dictionary* (11th ed.). Therefore, to have a "claim" under the no-fault act, a provider must have a right to payment of PIP benefits from a no-fault insurer. [*Covenant*, 500 Mich at 211 n 31 (citation omitted).]

The Court concluded that MCL 500.3112 "allows insurers to pay a provider of no-fault services directly 'for the benefit of' the insured, [but] it does not establish a concomitant claim enforceable by an insured's benefactors." *Id*. at 213-214. Here plaintiffs argue that the term "claim" in MCL 500.3148(2) should be construed in the same manner as the term was construed in

---

[8] The statute was amended by 2019 PA 21, effective June 11, 2019. The amendment is not relevant to this appeal.

MCL 500.3112 and that, applying this definition, IDS was not defending against a "claim" within the meaning of MCL 500.3148(2). They reason as follows: because the trial court determined that IDS was entitled to rescind the no-fault policy, the policy was therefore void *ab initio*, which, from a legal standpoint, means that it never existed. If no contract ever existed, then plaintiffs never had the right to receive PIP benefits from IDS, and could not have made a "claim" under the no-fault policy against which IDS was required to defend. See *Covenant*, 500 Mich at 211 n 31; MCL 500.3148(2).

While plaintiffs' argument is inventive, Michigan law does not support it. In *Bazzi*, 502 Mich at 409-410, our Supreme Court held that rescission is an equitable remedy and that the actual rescission of a policy does not occur automatically or by operation of law, but instead is left to the discretion of the trial court. See also *Meemic*, ___ Mich at ___; slip op at ___ n 19; *Bazzi*, 502 Mich at 409 (discussing the need for a trial court to balance the equities before applying the remedy of rescission). Therefore, until a trial court enters an order rescinding a policy, the policy remains in effect. During the 21-month period in which this action was pending, Simpson and Boyd were able to, and did, file claims for payment of PIP benefits under the policy, and IDS defended against those claims. *Covenant*, 502 Mich at 211 n 31. The plain language of MCL 500.3148(2) allows an insurer to seek an award of attorney's fees for fraudulent or excessive claims in such a situation.[9]

B. CASE EVALUATION SANCTIONS

Plaintiffs also argue that the trial court erred by awarding IDS case evaluation sanctions against both Simpson and Boyd and by declining to apply the interest-of-justice exception under MCR 2.403(O)(11). We disagree.

We review de novo a trial court's decision whether a party is entitled to case evaluation sanctions under MCR 2.403(O). *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008) (opinion by TAYLOR, C.J.). We review for an abuse of discretion a trial court's decision whether to invoke the interest-of-justice exception of MCR 2.403(O)(11). *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 364; 941 NW2d 685 (2019). We review for clear error any findings of fact that form the foundation for the trial court's ruling. *Id*.

MCR 2.403 provides, in pertinent part:

> **(O) Rejecting Party's Liability for Costs**.
>
> (1) If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. However, if the opposing

---

[9] We also reject plaintiffs' contention that *Esurance Prop & Cas Ins Co v Mich Assigned Claims Plan*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 344715), lv pending, supports their argument. Although this Court in *Esurance* recognized the legal principle that a rescinded insurance policy is considered void *ab initio*, we did not address the specific question presented in this appeal, i.e., whether a no-fault insurer is required to defend against a claim within the meaning of MCL 500.3148(2) before the no-fault policy was rescinded.

party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation.

* * *

(6) For the purpose of this rule, actual costs are

(a) those costs taxable in any civil action, and

(b) a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the case evaluation, which may include legal services provided by attorneys representing themselves or the entity for whom they work, including the time and labor of any legal assistant as defined by MCR 2.626.

* * *

(11) If the "verdict" is the result of a motion as provided by subrule (O)(2)(c), the court may, in the interest of justice, refuse to award actual costs.[10]

The parties do not dispute that plaintiffs rejected a unanimous case evaluation award and that the dismissal of their action with prejudice was less favorable than that award. See MCR 2.403(O)(2)(c), (4)(a), and (7). Therefore, plaintiffs do not dispute that IDS qualified for the recovery of case evaluation sanctions. Instead, plaintiffs argue that the trial court should have exercised its discretion and applied the interest-of-justice exception of MCR 2.403(O)(11) to decline an award of sanctions. We disagree that the trial court abused its discretion.

In *Haliw v Sterling Hts* (*On Remand*), 266 Mich App 444, 447; 702 NW2d 637 (2005), this Court stated that "Subsection 11 is an exception to the mandatory rule set forth in MCR 2.403(O)(1) that a party who rejects a case evaluation " 'must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation.' " This Court cautioned, however, that "[t]he term 'interest of justice' in MCR 2.403(O)(11) must not be too broadly applied so as to swallow the general rule of subsection 1 and must not be too narrowly construed so as to abrogate the exception." *Id*. at 448. In *Haliw*, this Court considered *Luidens v 63rd Dist Court*, 219 Mich App 24, 36; 555 NW2d 709 (1996), in which this Court had interpreted the offer-of-judgment rule in MCR 2.405 in analyzing the applicability of the interest-of-justice exception. Referring to *Luidens*, this Court stated that that

> factors normally present in litigation, such as a refusal to settle being viewed as "reasonable," or that the rejecting party's claims are "not frivolous," or that disparity of economic status exists between the parties, are insufficient "without more" to justify not imposing sanctions in the "interest of justice." [*Luidens*, 219 Mich App] at 33-34, 37. Rather, the unusual circumstances necessary to invoke the

---

[10] MCR 2.403 was amended, effective May 1, 2019. The amendments are not relevant to this appeal.

-10-

"interest of justice" exception may occur where a legal issue of first impression is presented, *id* at 35, or "where the law is unsettled and substantial damages are at issue, where a party is indigent and an issue merits decision by a trier of fact, or where the effect on third persons may be significant . . . ." [*Haliw*, 266 Mich App at 448, quoting *Nostrant v Chez Ami, Inc*, 207 Mich App 334, 343; 525 NW2d 470 (1994) (HARRISON, J., concurring in result only).]

Although this Court has stated that "sufficiently unusual circumstances" to warrant application of the interest-of-justice exception may exist when there is a "significant financial disparity" between the parties, see *Sabbagh*, 329 Mich App at 367, citing *Harbour Correctional Med Servs, Inc*, 266 Mich App 452, 466; 702 NW2d 671 (2004), we have noted that a mere "disparity of income" between parties is "too common" to fit within the interest-of-justice exception. *Luidens*, 219 Mich App at 34-35. This Court has stated:

There is almost always some degree of disparity of economic standing between the parties. MCR 2.405's purpose of encouraging settlement will be undermined if the economic position of the parties is used to determine whether attorney fees will be awarded. Parties' economic standing should not determine whether they face the risk of costs and attorney fees in rejecting an offer of judgment; nor should parties be able to engage in litigation with governmental or larger corporate entities secure in the knowledge that they need not weigh the same considerations as parties suing entities that are less financially endowed. [*Id*. at 34.]

In other words, although not dispositive in and of itself, a party's indigency is a factor a court may consider in determining whether to apply the interest-of-justice exception, along with other factors such as the presence of a legal issue of first impression, an unsettled area of the law, or a significant effect on third parties. *Haliw*, 266 Mich App at 448.

In this case, plaintiffs argue that the trial court abused its discretion by declining to apply the interest-of-justice exception because (1) it misstated pertinent facts concerning whether Simpson and Terry had misrepresented to IDS where the insured vehicles were kept, and (2) the law was unsettled in the area of the availability of the defense of rescission in this context. We disagree.

In granting IDS's motion for an award of attorney's fees under MCL 500.3148(2), the trial court stated:

So with respect to Isha Simpson, because the Court found there was fraud in connection with the application and misrepresentations, and intentional misrepresentations about where the vehicle was garaged for the sole purpose of obtaining a lower premium I think that triggers a right on the part of the insurance company to seek attorney fees under [MCL 500.3148(2)]. So I would award attorney fees against Ms. Simpson under [MCL 500.3148(2)].

This conclusion was supported by Simpson's deposition testimony that Simpson and Terry used Simpson's address because Simpson lived in Redford, and they hoped to secure a lower premium

by avoiding rates charged in Detroit, and was not clearly erroneous.  *Gentris*, 297 Mich App at 361.  Moreover, the trial court rendered this conclusion in the context of finding that Simpson's claim was "in some respect fraudulent" as contemplated by MCL 500.3148(2), not in the context of determining whether to apply the interest-of-justice exception to refuse to award case evaluation sanctions.  The trial court made no similar statements when making its award of case evaluation sanctions.  Accordingly, plaintiffs' argument lacks merit.

Plaintiffs' argument that the law was unsettled with respect to whether IDS could rescind its policy on the basis of fraud is also not convincing.  While *Meemic* clarified that an insurer may only rely on an antifraud clause that is consistent with the common law or statutory authority, our Supreme Court had already confirmed in *Bazzi* that an insurer has the option of seeking to rescind a no-fault policy on the basis of fraud in the procurement.  *Bazzi* in turn relied upon *Titan*, 491 Mich at 555-556, 558, in which our Supreme Court recognized that an insurer may seek the remedy of rescission on the basis of fraud in the procurement of a contract.  Contrary to plaintiffs' contention, the law was not unsettled in this area.

In their reply brief, plaintiffs argue for the first time that a significant financial disparity exists between plaintiffs and IDS.  Issues raised for the first time in appellate reply briefs are not properly before this Court.  See *Blazer Foods, Inc v Restaurant Props, Inc*, 259 Mich App 241, 252; 673 NW2d 805 (2003).  Further, as stated, financial disparity alone is not an unusual circumstance that warrants application of the exception.  *Luidens*, 219 Mich App at 34-35.  The trial court did not abuse its discretion by declining to apply the interest-of-justice exception so as not to award case evaluation sanctions.  *Sabbagh*, 329 Mich App at 364.

Affirmed in both appeals.


/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Stephen L. Borrello