*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOSHUA RAY CAVINS,

Plaintiff-Appellee,

v

BAT COMMERCIAL, LLC, BEST AMERICAN
AMUSEMENT GROUP, INC., AIRTIME
TRAMPOLINE & GAME PARK, A/T NOVI LAND
DEVELOPMENT, LLC, AT OF WOODHAVEN,
LLC, AT OF NOVI, LLC, MICHIGAN AIRTIME I,
LLC, MICHIGAN AIRTIME II, LLC, MICHIGAN
AIRTIME III, LLC, MICHIGAN AIRTIME
HOLDINGS, LLC, SPRING LOADED II, LLC, and
JAMES NAFSO,

Defendants,

and

MICHIGAN AIRTIME IV, LLC,

Defendant-Appellant.

UNPUBLISHED
May 23, 2024

No. 363424
Oakland Circuit Court
LC No. 2021-187255-NO

Before: FEENEY, P.J., and M. J. KELLY and RICK, JJ.

PER CURIAM.

In this action arising from a trampoline injury, defendant Michigan Airtime IV, LLC[1] appeals by leave granted the trial court's order denying its motion for summary disposition under MCR 2.116(C)(10). We reverse for the reasons stated in this opinion.

---

[1] All other named defendants were previously dismissed from this action. Thus, Michigan Airtime is the only defendant participating in this appeal.

# I. BASIC FACTS

Plaintiff Joshua Ray Cavins sustained a cervical spinal injury while attempting to perform a flip on one of Michigan Airtime's trampolines at its indoor trampoline park. Michigan Airtime had posted signs at its facility stating instructions and warnings for patrons using the trampolines, as required by the Michigan Trampoline Court Safety Act (TCSA), MCL 691.1731 *et seq*. One of the signs contained the verbatim text of MCL 691.1735, which prescribed the duties of trampoliners. This sign was posted above an ATM and paperwork kiosk near the facility's entrance. Although only one sign listed all of the prescribed duties in MCL 691.1735, other signs were posted that stated the substance of various statutory duties for trampoliners. The other signs warned trampoliners to maintain control of their speed and course, to refrain from participating while under the influence of drugs or alcohol, to use the trampoline court within their own "limitations, training, and acquired skills," and to avoid landing on their head or neck. In particular, signage in the "Distortions" area where Cavins' accident occurred advised: "DO NOT jump if you have health limitations or injuries, are under the influence of alcohol or drugs, or are pregnant," "DO NOT land on head or neck" and "ALWAYS remain in control," and "Master the fundamentals of single trampoline jumping before moving on to more advanced maneuvers such as trampoline-to-trampoline jumping, wall trampoline jumping, and aerial type skills, which increase the risk of injury." Michigan Airtime also used recorded video and audio recordings that repeatedly reminded trampoliners to exercise caution. A recorded audio statement reminded them to land on both feet and to not attempt a double flip. A safety video also advised trampoliners to follow posted rules, to jump with both feet, and to not attempt double flips.

Cavins and his family visited the trampoline court on April 6, 2018. Cavins authorized[2] his wife to fill out the paperwork, including a release of liability. Cavins admitted that he had consumed "a couple of half-pints of vodka" between leaving work and arriving at the trampoline park. He also stated that after he arrived at the facility, he returned to his vehicle to drink still more vodka while his wife completed the paperwork. Cavins denied seeing the sign listing the statutory duties of trampoliners. He testified that the sign was on the wall opposite the reception desk, in a location where patrons would not see it unless they turned around to look behind them.

After jumping for a few minutes in the "Distortions" area, Cavins tried to perform a flip. Cavins said that he attempted to perform just a single flip, but he inadvertently over-rotated and landed on his head or neck on an adjacent trampoline. He sustained an injury to his cervical spine, leaving him quadriplegic. A blood draw after Cavins injury indicated that he had a blood alcohol content (BAC) of 0.21.

Cavins brought this action against defendant and other related entities. He asserted claims for "Negligence," "Negligence in Product," "Implied and Expressed Warranty of Fitness and Merchantability," "Products Liability," "Knowledge of Defective Product," "Gross Negligence," and "Wanton Misconduct." Michigan Airtime moved for summary disposition on grounds that there were no genuine issues of material fact that it was liable under the TCSA or under any

---

[2] Although not raised by the parties, we question whether a husband may orally "authorize" his wife to sign a liability release on his behalf.

common-law theory. Michigan Airtime argued that Cavins could not establish that it violated any provision of the TCSA, and that Cavins' claims were barred by the defense of assumption of risk, the liability release signed by his wife on his behalf, and because Cavins was intoxicated and more than 50 percent at fault for the accident. Cavins filed his own motion for summary disposition to challenge the validity of the release.

The trial court concluded that Michigan Airtime failed to comply with the TCSA because it required signage listing the trampoliners' duties in more than one location. The court concluded that there were issues of fact regarding whether Michigan Airtime's statutory violation was the proximate cause of Cavins' injury. The court also found that there were questions of fact as to whether Cavins' intoxication precluded his claim. Further, the court denied summary disposition on the basis of the release because it was uncertain whether a release could bar Michigan Airtime's liability for noncompliance with a statutory duty. The trial court agreed that Cavins failed to establish a question of fact regarding whether Michigan Airtime's equipment was defective on the day of the accident, or whether any defect contributed to the accident, but it declined to grant partial summary disposition and instead denied Michigan Airtime's motion in full. This Court granted Michigan Airtime's application for leave to appeal.[3]

## II. SUMMARY DISPOSITION

## A. STANDARD OF REVIEW

Michigan Airtime argues that the trial court erred by denying its motion for summary disposition. A trial court's decision on a motion for summary disposition is reviewed de novo. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Summary disposition under MCR 2.116(C)(10) is warranted "when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). The reviewing Court must "review the pleadings, affidavits, and other documentary evidence submitted, make all reasonable inferences therefrom, and determine whether a genuine issue of material fact exists, giving the nonmoving party the benefit of reasonable doubt." *Wheeler v Shelby Charter Twp*, 265 Mich App 657, 663; 697 NW2d 180 (2005). "If the moving party properly supports his or her motion, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists." *Redmond v Heller*, 332 Mich App 415, 438; 957 NW2d 357 (2020). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018) (quotation marks, brackets, and citation omitted). "Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material

---

[3] *Cavins v BAT Commercial LLC*, unpublished order of the Court of Appeals, entered March 16, 2023 (Docket No. 363424).

fact exists." *Lowrey*, 500 Mich at 7. "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Id*.

## B. ANALYSIS

## 1. CAUSATION AND TCSA VIOLATION

Cavins' complaint asserted seven counts, which were predicated on two factual bases for recovery relevant to Michigan Airtime: (1) that Michigan Airtime failed to post sufficient warnings regarding the hazards of trampolining; and (2) that Michigan Airtime's equipment was faulty. The former of these theories asserted that Michigan Airtime failed to comply with the TCSA, MCL 691.1733, which imposes the following duties on the operator of a trampoline court:

> An operator shall do all of the following:
>
> (a) Post the duties of trampoliners and spectators as prescribed in this act and the duties, obligations, and liabilities of operators as prescribed in this act in conspicuous places.
>
> (b) Comply with the safety standards specified in ASTM[4] F2970 - 13, "Standard Practice for Design, Manufacture, Installation, Operation, Maintenance, Inspection and Major Modification of Trampoline Courts" published in 2013 by the American society for testing and materials.
>
> (c) Maintain the trampoline court according to the safety standards cited in subdivision (b).
>
> (d) Maintain the stability and legibility of all required signs, symbols, and posted notices.

MCL 691.1734 further provides that an operator must:

> (a) Deliver instructions concerning trampoline court rules to trampoliners before they participate in the trampoline court. The instructions may be delivered to trampoliners using video, audio, or computer-based programs, a prerecorded spiel, a written document, signage, verbal instruction, or other delivery method approved by the operator.
>
> (b) Convey to trampoliners the substance of the trampoliner responsibility requirements under section 5.

The TCSA imposes the following duties on trampoliners:

> While in a trampoline court, a trampoliner shall do all of the following:

---

[4] American Society for Testing and Materials.

-4-

(a) Maintain reasonable control of his or her speed and course at all times.

(b) Read and follow all posted signs and warnings.

(c) Avoid bodily contact with other trampoliners or spectators.

(d) Not run on trampolines, over pads, or on platforms.

(e) Refrain from acting in a manner that may cause injury to others.

(f) Not participate in a trampoline court when under the influence of drugs or alcohol.

(g) Properly use all trampoline court safety equipment provided.

(h) Not participate in a trampoline court if he or she has a preexisting medical condition, a bone condition, a circulatory condition, a heart or lung condition, a back or neck condition, high blood pressure, or a history of spine, musculoskeletal, or head injury, if he or she has had recent surgery, or if she may be pregnant.

(i) Remove inappropriate attire, including hard, sharp, or dangerous objects, such as buckles, pens, purses, or badges.

(j) Conform with or meet height, weight, or age restrictions imposed by the operator to use or participate in the trampoline court activity.

(k) Avoid crowding or overloading individual sections of the trampoline court.

(l) Use the trampoline court within his or her own limitations, training, and acquired skills.

(m) Avoid landing on the head or neck. Serious injury, paralysis, or death can occur from that activity. [MCL 691.1735.]

The TCSA also imposes an assumption of risk on participants for injuries inherent in trampoline use unless the operator breaches any of the duties imposed on an operator:

An individual who participates in trampolining accepts the danger that inheres in that activity insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, injuries that result from collisions with other trampoliners or other spectators, injuries that result from falls, injuries that result from landing on the trampoline, pad, or platform, and injuries that involve objects or artificial structures properly within the intended travel of the trampoliner that are not otherwise attributable to the operator's breach of his or her common law duties. [MCL 691.1736.]

MCL 691.1737 provides that "[a] trampoliner, spectator, or operator who violates this act is liable in a civil action for damages for the portion of the loss or damage that results from the violation." In sum, if Cavins can prove that Michigan Airtime violated a specific duty imposed on an operator under the act, Cavins may recover damages for injuries caused by that violation. See *Rusnak v Walker*, 273 Mich App 299, 304; 729 NW2d 542 (2006) (construing virtually identical language in the in the Ski Area Safety Act (SASA), MCL 408.321 *et seq*.).

The trial court concluded that Michigan Airtime failed to comply with the statute that requires an operator to "[p]ost the duties of trampoliners . . . in conspicuous *places*" because Michigan Airtime posted the duties in only one place. Michigan Airtime argues that, to the extent that it was not in compliance with the signage requirements of the TCSA, the trial court erred by ruling that there was a genuine issue of material fact whether this omission was the cause of Cavins' injuries. We agree.

To prove causation, a plaintiff "must demonstrate that 'but for' the defendant's negligence, the plaintiff's injury would not have occurred." *Nathan v David Leader Mgt, Inc*, 342 Mich App 507, 522; 995 NW2d 567 (2022) (citation omitted). "Proof of proximate cause requires establishing two elements: (1) cause in fact and (2) legal cause or proximate cause." *Auto Owners Ins Co v Seils*, 310 Mich App 132, 157; 871 NW2d 530 (2015). "Cause in fact requires that the harmful result would not have come about but for the defendant's . . . conduct." *Haliw v Sterling Hts*, 464 Mich 297, 310; 627 NW2d 581 (2001). "A plaintiff must adequately establish cause in fact in order for legal cause or 'proximate cause' to become a relevant issue." *Skinner v Square D Co*, 445 Mich 153, 162-163; 516 NW2d 475 (1994). Once a plaintiff produces the factual support establishing a logical sequence of cause and effect, the plaintiff must also come forward with evidence supporting that the actual cause was proximate, meaning that it created a foreseeable risk of the injury the plaintiff suffered." *Nathan*, 342 Mich App at 522 (citation omitted).

"Proximate cause is that which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, without which such injury would not have occurred." *Auto Owners Ins Co*, 310 Mich App at 157. "[C]ausation theories that are mere possibilities or, at most, equally as probable as other theories do not justify denying defendant's motion for summary judgment." *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 282; 807 NW2d 407 (2011) (quotation marks and citation omitted). "[P]roper analysis of a proximate cause question frequently will turn on accurately determining whether the facts in a case present a situation involving direct causality or intervening causality." *McMillian v Vliet*, 422 Mich 570, 577; 374 NW2d 679 (1985). "The fact that more than one cause operates to produce an injury is not in itself determinative. Two causes frequently operate concurrently so that both constitute a direct proximate cause of the resulting harm." *Id*. "An intervening cause situation is distinguishable from concurrently operating causes in that it involves an intervening cause or act which begins operating 'after the actor's negligent act or omission has been committed.' " *Id*., quoting 2 Restatement Torts, § 441, p 465. "Whether proximate cause or legal cause is established normally requires examining the foreseeability of the consequences and whether the defendant should be held legally responsible for those consequences." *Auto Owner*, 310 Mich App at 157.

The evidence demonstrated that Michigan Airtime had one sign that fully listed all of the duties of trampoliners prescribed in MCL 691.1735, but had other signs that conveyed the same information, but without citing the TCSA or quoting its language verbatim. Assuming for

purposes of this issue that the TCSA required Michigan Airtime to post more than one sign listing all of the prescribed statutory duties, Cavins must still establish that any noncompliance with this signage requirement was a proximate cause of his injury. Cavins' only evidence of causation is his affidavit, in which he averred that he would not have attempted the flip maneuver if he had seen a sign informing him "to use the trampoline court within [his] own training and acquired skills."

We are not persuaded that a reasonable trier of fact could find that the absence of a second sign directly quoting and citing the TCSA was the proximate cause of Cavins' injury. The fully-compliant TCSA sign and two other signs advised trampoliners to use the facility consistently with their level of skill. Moreover, signage in the Distortions section where Cavins was jumping advised trampoliners not to jump while under the influence of alcohol and to "[m]aster the fundamentals of single trampoline jumping before moving on to more advanced maneuvers such as trampoline-to-trampoline jumping, wall trampoline jumping, and aerial type skills, which increase the risk of injury." The signs also instructed trampoliners to avoid landing on their head or neck, and to jump and land with both feet. Thus, regardless of the number of other signs posted by Michigan Airtime in its facility, signage in the Distortions section where Cavins was jumping advised him of the increased risk of injury from trampoline-to-trampoline jumping and advanced maneuvers involving aerial type skills, and that a jumper should master the fundamental skills of single trampoline jumping before attempting such maneuvers. Cavins was not deprived of any specialized information regarding the difficulties or hazards of attempting to invert one's body in the air.

Cavins' interpretation of the "Master the fundamentals" statement as "informing invitees" that they are "ready for 'aerial type skills' " is unreasonable and untenable. In context, the phrase expresses a level of achievement a trampoliner should accomplish before attempting advanced maneuvers, but it does not otherwise express that a trampoliner who has mastered the fundamentals of single trampoline jumping is ready for advanced maneuvers. Moreover, the warning specifically advises trampoliners of the increased risk of injury from performing advanced maneuvers.

In conclusion, to the extent that Michigan Airtime was not in compliance with the TCSA by failing to post signs listing all of the prescribed statutory duties of trampoliners in multiple conspicuous places, because Cavins' injury arose from his attempt to execute an advanced maneuver involving an aerial jump, and because signage in the Distortion section where he was jumping warned of the increased risk of injury from advanced maneuvers, including those involving aerial skills, and that such maneuvers should not be attempted before mastering single trampoline jumping, there is no genuine issue of material fact whether the alleged signage violation was a proximate cause of Cavins' injury. The trial court, therefore, erred by denying Michigan Airtime summary disposition on this basis.

## 2. VOLUNTARY INTOXICATION

Michigan Airtime argues that it was also entitled to summary disposition on the basis of Cavins' intoxication because Cavins failed to establish a genuine issue of material fact to overcome the presumption that he was intoxicated and that his intoxication rendered him 50 percent or more at fault for his accident. Under MCL 600.2955a and MCL 257.625a(7), as amended by 2017 PA

153,[5] in order to successfully avail itself of the absolute defense of impairment under MCL 600.2955a, Michigan Airtime "was required to establish that (1) [Cavins] had an impaired ability to function due to the influence of intoxicating liquor or a controlled substance, and (2) that as a result of that impaired ability, [Cavins] was fifty percent or more the cause of the accident or event that resulted in his [injury]." *Harbour v Correctional Med Servs, Inc*, 266 Mich App 452, 456; 702 NW2d 671 (2005). If an intoxicated person has a blood alcohol level at the statutory threshold under MCL 257.625a(7), he or she "presumptively had an 'impaired ability to function due to the influence of intoxicating liquor' under MCL 600.2955a(2)(b)." *Harbour*, 266 Mich App at 457. "[T]he intoxication statute sought to place more responsibility on intoxicated plaintiffs who are equally or more to blame for their injuries, therefore marking a shift toward personal responsibility envisioned by overall tort reform." *Wysocki v Kivi*, 248 Mich App 346, 358-359; 639 NW2d 572 (2001).

In this case, Michigan Airtime presented evidence that Cavins consumed two half pints of vodka between leaving work and arriving at the trampoline park, consumed yet more vodka in the parking lot at the facility, and registered a BAC of 0.21 at the hospital. This evidence established a rebuttable presumption of impairment under MCL 600.2955a(2)(b). Cavins argues that his BAC when his blood was collected after the accident might not reflect his BAC at the time of the accident. He suggests the possibility that the accident occurred after the effect of his earlier alcohol consumption wore off, and before the effect of his consumption in the parking lot manifested itself. However, Cavins did not submit any expert opinion or other evidence supporting his hypothesis that a 0.21 BAC after his injury might not accurately reflect his BAC level at the time of his injury to rebut the presumption of impairment. Cavins also argues that he was not visibly impaired in the trampoline park, but the only evidence he offered in support of this allegation was a set of still photographs from video footage. He further speculates that a sober person with no gymnastics experience might make the mistake of over-rotating in a flip. However, Cavins did not demonstrate conduct or decision-making of a person who was acting reasonably or responsibly. On the contrary, he delegated to his wife the task of completing the release and paperwork while he went to his car to drink more vodka. He failed to observe warning signs in the section he was jumping. Additionally, he attempted to perform an advanced aerial stunt after only a few minutes of trampoline use, despite admittedly having no gymnastic experience or experience performing aerial maneuvers on a trampoline. He additionally ignored nearby signage that warned against performing such maneuvers before mastering single trampoline jumping and the increased risk of injury associated with such maneuvers. Thus, a reasonable trier of fact could not conclude that Cavins rebutted the presumption of impairment. Further, there is no genuine issue of material fact that Cavins was 50% or more at fault for his injuries given that it was Cavins' decision to attempt a risky maneuver far outside his skill and experience level. Therefore, the trial court erred by denying Michigan Airtime's motion for summary disposition on the basis of Cavins' intoxication.

---

[5] This version of the statute became effective November 8, 2017, and applies to Cavins' intoxication on the date of the accident.

### 3. FAULTY EQUIPMENT

Michigan Airtime next argues that the trial court erred by not dismissing Cavins' claims predicated on allegedly defective equipment in its trampoline park. The TCSA requires that trampoline court operators "[c]omply with the safety standards specified in ASTM F2970 – 13" and maintain the trampoline courts according to ASTM standards. MCL 691.1733(b) and (c). Additionally, Cavins alleged that defendants violated the Michigan Product Liability Act, MCL 600.2945 *et seq.*, "by failing to properly design, manufacture, construct, test, guard, maintain and inspect the product, i.e., the trampolines." Cavins also alleged defective conditions in his various claims for negligence, breach of warranty, and product liability. We conclude that, based upon the pleadings, failure to maintain and failure to inspect are the only alleged omissions that reasonably apply to Michigan Airtime.

Regardless of Cavins' theory of liability, he failed to establish a genuine issue of material fact as to whether there was a defect with Michigan Airtime's equipment on the date of his injury or whether any defect proximately caused his injury. "A court may only consider substantively admissible evidence actually proffered by the parties when ruling on the motion." *Anderson v Transdev Servs, Inc*, 341 Mich App 501, 507; 991 NW2d 230 (2022); MCR 2.116(G)(6). Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence" and "(b) the fact is of consequence in determining the action." MRE 401. Generally, relevant evidence is admissible unless provided otherwise by the United States Constitution, the Michigan Constitution, or the rules of evidence. MRE 402.

In support of his claim that Michigan Airtime failed to maintain the trampolines that caused his injury, Cavins cited maintenance and inspection requirements from the equipment's manufacturer, but he did not present any evidence that Michigan Airtime failed to comply with these requirements on the date of his injury. Although Cavins also cited findings from an inspection of the equipment at the trampoline part, the record reflects that the inspection was conducted more than 2-1/2 years after he was injured. Such evidence was not probative of the equipment's condition or the existence of any defect on the date of Cavins' accident. Moreover, Cavins failed to explain how any of the defects allegedly discovered in 2020 might have caused him to land unsafely. Cavins opined that the trampolines were too small and that some were "springier" than others. However, he did not offer any evidence indicating whether these conditions failed to comply with ASTM standards or otherwise made the trampolines unreasonably dangerous. Indeed, these issues involve questions of technical or specialized knowledge that would require expert testimony under MRE 702. Cavins did not offer any expert testimony that the conditions he observed on the date of his injury rendered the trampolines unreasonably dangerous, let alone were a cause of his injury. Thus, Cavins failed to establish a genuine issue of material fact regarding his claims that defendant violated the TCSA by failing to properly maintain its trampoline court or that the trampolines otherwise were unreasonably dangerous.

### III. CONCLUSION

In sum, Cavins failed to establish a genuine issue of material fact in support of any of his theories of liability against Michigan Airtime. Cavins cannot recover for any failure to comply with the signage requirements of the TCSA because he cannot establish a causal connection between the alleged signage violation and his injury and because there is no genuine issue of

material fact that he was 50 percent or more responsible for his accident because of his intoxication. Plaintiff also failed to establish a genuine issue of material fact regarding his claim that Michigan Airtime's equipment was defective or contributed to his injury. Accordingly, we reverse the trial court's order denying summary disposition.[6]

Reversed. Michigan Airtime may tax costs as the prevailing party. MCR 7.219(A).

/s/ Kathleen A. Feeney
/s/ Michael J. Kelly
/s/ Michelle M. Rick

---

[6] Given our resolution, we decline to consider whether Michigan Airtime was entitled to summary disposition because of the release of liability that Cavins' wife signed.